Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 6998 (96 CR 379-1) | DATE | 3/11/2003 |
| CASE TITLE | UNITED STATES vs. DARRYL JOHNSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due _____ . Reply to answer brief due _____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Petitioner's motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure [1-1] and petitioner's motion for leave to conduct discovery [10-1] are denied with prejudice as to Grounds I-V and VII-VIII and without prejudice as to Ground VI. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 12 2003 date docketed | 20 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 3/11/2003 date mailed notice | |
| CB courtroom deputy's initials | | PW mailing deputy initials | |

[stamps: U.S. DISTRICT COURT, 03 MAR 11 PM 4:48, Date/time received in central Clerk's Office]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

MAR 1 2 2003

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff - Appellee - Respondent, ) | No. 02 C 6998 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| DARRYL JOHNSON, ) | |
| ) | |
| Defendant - Appellant - Petitioner. ) | |

## **MEMORANDUM OPINION AND ORDER**

Darryl Johnson ("Johnson") was convicted of ordering the murder of a person assisting in federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise. Johnson was sentenced to death. The Seventh Circuit affirmed Johnson's conviction and sentence. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). The Supreme Court denied Johnson's petition for writ of *certiorari*. *Johnson v. United States*, 122 S. Ct. 71 (2001). Johnson filed a timely petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") and Fed. R. Crim. P. 33.

In his petition, Johnson claims he was denied effective assistance of counsel, in violation of the Sixth Amendment (Ground I); the government failed to disclose evidence that impeaches a government witness, in violation of the Fifth Amendment (Ground II); the jury relied on incomplete and potentially misleading testimony in sentencing him to death, in violation of the Eighth Amendment (Ground III); the relaxed evidentiary standards allowed by Federal Death Penalty Act of 1994 ("FDPA") during the penalty phase of a capital trial violates the Sixth Amendment (Ground IV); the indictment does not contain all statutory aggravators, in violation of the Fifth Amendment (Ground V); his execution will violate his right to be free from cruel and unusual punishment guaranteed by the Eight Amendment because he may be mentally retarded (Ground VI); his selection for capital prosecution violates his due process rights guaranteed by the Fifth Amendment because

1



federal capital cases are brought disproportionately against minorities (Ground VII); and the jurors may have considered information outside the record in sentencing him to death (Ground VIII). Johnson moves for leave to conduct discovery in connection with his § 2255 petition pursuant to Habeas Rule 6(a).

## BACKGROUND

Johnson was charged in a fifty-one count indictment alleging that he conspired to sell drugs through the Gangster Disciples street gang and ordered the murders of two fellow gang members, Charles Banks and Darryl "Blunt" Johnson. The government sought the death penalty for the two murders by filing a post-indictment Notice of Intent to Seek the Death Penalty under the FDPA. The government dismissed eight counts prior to trial. On November 4, 1997, a jury convicted Johnson on the 43 remaining counts, including the two murder charges.

At Johnson's sentencing hearing, the parties presented evidence on the non-statutory aggravating factor of future dangerousness. The government presented evidence that Johnson was involved in numerous violent crimes, including the discipline of fellow gang members. In addition to the murders of "Blunt" Johnson and Banks, the jury heard testimony about the murder of another fellow gang member, Gregory "G" Sharpe (Tr. 1944-56), a shooting in a McDonald's parking lot that left two people dead (Tr. 1880-87), the shooting of a truck driver who interrupted Johnson's security convoy at an intersection (Tr. 1891-95), the murder of a rival gang member (Tr. 1888-90) and several severe beatings Johnson ordered. (Tr. 1800-1805, 1896-1916). The government offered evidence that Johnson was convicted of manslaughter for shooting and killing Jesse Simpson in 1983. Tr. 1847-53, 1975. A Metropolitan Correctional Center officer testified that Johnson threatened to "get" fellow gang member and co-defendant Quan Ray while they were in custody awaiting trial. Tr. 1863-72.

In response, Johnson called Dr. Mark Cunningham to testify about the custodial options available to the Bureau of Prisons ("BOP"), including the control unit in the federal maximum security prison in Florence, Colorado ("ADX Florence"). Tr. 2282-87. Cunningham testified that

2

Johnson could be permanently sentenced to the control unit in ADX Florence, where inmates are confined one to a cell for 23 hours per day without any contact with other inmates. Tr. 2284-95. According to Cunningham, monitoring by the BOP ensures that gang members like Johnson would "simply have no opportunity to carry out gang-related activities." Tr. 2289. Cunningham opined that there was an "extraordinarily low" likelihood that Johnson would be a danger to others if he were confined to the control unit in ADX Florence. Tr. 2306-07.

In rebuttal, the government presented the testimony of John Vanyur, a former assistant warden at ADX Florence. Vanyur testified that ADX Florence, with a capacity of only 484 inmates, has a well-defined "mission" as a place to house inmates who cannot function in an open prison environment. Tr. 2464. Approximately 90% of the inmates at ADX Florence were transferred from other BOP facilities because of serious misconduct during their incarceration, while 9% are assigned to ADX Florence from the sentencing court. Tr. 2466-67, 2499. Inmates directly assigned to ADX Florence are typically high-ranking organized crime figures, international and domestic terrorists, and high-ranking drug cartel members. Tr. 2468. The authority to place an inmate in a specific institution rests solely with the BOP. *Id.* Vanyur testified that the BOP regulatory scheme prohibits assignment and indefinite confinement in a control unit based on offenses committed in the community. Tr. 2483-85.

During his testimony, Vanyur provided examples of how ADX Florence inmates communicate with each other and the outside world. Tr. 2478-79. For example, inmates send notes through the plumbing system, yell through the vents, learn sign language, use encryption systems, such as an ancient alphabet, in inmate correspondence, use codewords to communicate messages outside the facility, and use "drop-calling." *Id.* To illustrate drop-calling, Vanyur recounted an incident where intelligence had shown that the leader of the Aryan Brotherhood, who was incarcerated at ADX Florence, successfully ordered the murders of two African-American inmates in Lewisburg, Pennsylvania. *Id.* at 2479-80. The Aryan Brotherhood leader made a "drop" communication ordering the murders to an individual in California by speaking in code. *Id.*

3

Inmates in the control unit are allowed one 15 minute telephone call, up to five non-contact visits per month, and virtually unlimited correspondence with the outside world. Tr. 2485. According to Vanyur, Johnson would likely be placed in the open population at a high security penitentiary, rather than ADX Florence. Tr. 2474-75, 2496-97. In an open population setting, an inmate "would have as many phone calls as he could pay for or get someone to accept them as collect charges, so he would have virtually unlimited phone access if he has the time to make the phone calls. And he would have unlimited correspondence privileges." Tr. 2477. After more than 13 hours of deliberation, the jury returned two death sentences against Johnson.

## DISCUSSION

### I. Discovery Motion

Johnson filed his motion for leave to conduct discovery on February 3, 2003, over four months after he filed his § 2255 petition. Indeed, Johnson did not file his discovery motion until after the government filed its response to his § 2255 petition. Johnson does not provide any explanation for the delay. Nor does the government object. Therefore, the court will consider Johnson's tardy discovery motion under Habeas Rule 6(a).

Rule 6(a) provides in relevant part:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

28 U.S.C.A. § 2255 Rule 6(a). In order to meet this standard, Johnson must: (1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show good cause for the discovery. *Harris v. Nelson*, 394 U.S. 286, 298-300 (1969). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-9 (1997). In order to determine whether Johnson has shown good cause for the requested discovery, the court must first evaluate the merits of his underlying claims.

4

## II. Habeas Petition

Collateral relief under § 2255 is available to a petitioner who shows "an error of law that is jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995). Section 2255 relief is neither a recapitulation of, nor a substitute for, direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds, Castellanos v. United States*, 26 F.3d 717, 719, 20 (7th Cir. 1994).

### A. Ineffective Assistance of Counsel (Ground I)

Johnson claims the lawyers who represented him before this court were ineffective during the guilt and penalty phases of his trial. Johnson did not raise an ineffective assistance of counsel claim on direct appeal. Ineffective assistance of counsel may be raised for the first time in a § 2255 motion only if: (1) trial and appellate counsel were the same; or (2) the defendant needed time to develop additional extrinsic evidence to support his ineffective assistance claim. *Guinan v. United States*, 6 F.3d 468, 471-72 (7th Cir. 1993). Different counsel represented Johnson at trial and on direct appeal. Therefore, Johnson must establish that evidence outside the trial record is necessary to support his ineffective assistance of counsel claim. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

#### 1. Sentencing - Failure to Investigate

The bulk of Johnson's § 2225 petition is dedicated to his claim that he "was deprived of the effective assistance of counsel in investigating, researching, preparing for, and confronting through the adversarial process the testimony of Warden Vanyur. . ." Memorandum at 6. Specifically, Johnson argues his counsel failed to obtain evidence that the BOP imposed the strict confinement conditions advocated by the defense on other federal inmates prior to his sentencing hearing and that BOP policies in place at the time of sentencing, including 18 U.S.C. § 3582(d) and 28 C.F.R. § 501.3, allowed these strict confinement conditions. In response, the government argues Johnson's

claim is procedurally defaulted because this evidence was a matter of public record known to Johnson at the time of his direct appeal.

### a. Procedural Default

An ineffective assistance of counsel claim "apparent from the trial record or from evidence that is a matter of public record" must be raised on direct review. *Bond v. United States*, 1 F.3d 631, 636 (7th Cir. 1993), *citing United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991). In his petition, Johnson repeats the arguments made in his post-sentencing briefs before this court. *See* defendant's reply to government's response regarding Count II of the motion to vacate the jury's death-penalty phase verdicts [254-1], defendant's statement regarding the need for a hearing on Count II of the motion to vacate the jury's death-penalty phase verdicts [258-1], defendant's memorandum with regard to *United States v. Felipe* [280-1], defendant's reply memorandum concerning *United States v. Felipe* [285-1] and defendant's motion to append two documents to his reply memorandum concerning *United States v. Felipe* [289-1]. Indeed, Johnson relies on the same cases in his petition as he did in his post-sentencing motions. *Compare Id.*, *citing United States v. Felipe*, S16-94CR395 (S.D.N.Y.), *aff'd* 148 F.3d 101 (2d Cir. 1998), *United States v. Yousef*, S16 94 CR 395 (S.D.N.Y.) and *United States v. Jones*, No. WMN-96-0-458 (D. Md.) with memorandum at 17-19. The Seventh Circuit considered and rejected Johnson's arguments on direct appeal. *Johnson*, 223 F.3d at 673-74. Although Johnson cites additional cases in which the BOP imposed strict confinement conditions on other federal inmates, these cases are cumulative of grounds Johnson presented to this court and to the appellate court.

Moreover, the affidavit of trial counsel Jeffrey Urdangen offers nothing new. Petition at Ex. A. Contrary to Johnson's position, the record establishes that trial counsel's failure to present this evidence during the sentencing hearing was not a tactical decision. Indeed, defense counsel informed this court that he did not learn of this evidence until after sentencing. *See* defendant's unopposed motion for a fourteen day extension of the deadline to file his reply memorandum [248-1]("Since March 6th, counsel have been made aware of [f]ederal proceedings in other jurisdictions which tend

to undermine the position on future dangerousness which the government in this case advanced not only in the penalty phase, but in their responsive pleadings recently filed with this Court"). *See also Johnson*, 223 F.3d at 672 ("defendant calls the warden's testimony 'false' and argues that since it came in on rebuttal he didn't have a chance to meet it and so was unfairly surprised"). Under these circumstances, Johnson's claim regarding the ineffectiveness of his trial counsel in failing to present this evidence during sentencing should have been raised on direct appeal.

In order to overcome procedural default, Johnson must show: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims; or (2) a fundamental miscarriage of justice resulting from the district court's refusal to consider the claims. *McCleese*, 75 F.3d at 1177-78. The cause and prejudice standard is more rigorous than the plain error standard used on direct review. *United States v. Frady*, 456 U.S. 152, 170 (1982). Johnson claims he can show both good cause and actual prejudice for his failure to raise his ineffective assistance claims on direct appeal. Alternatively, he claims a fundamental miscarriage of justice would result from the court's refusal to consider his claims.

**(1)     Cause and Prejudice**

Johnson first argues he has shown good cause because additional discovery is necessary to establish his ineffective assistance of counsel claim. Specifically, he seeks information regarding other federal prisoners who have been held under the strict conditions of confinement advocated by the defense during sentencing. *See* discovery motion at 7-9. Good cause requires a showing of some external objective impediment to Johnson's presentation of his claim, such as unavailability of the factual or legal bases for a claim, or interference by state officials. *Murray v. Carrier*, 477 U.S. 478, 485-87 (1986). Johnson was aware of the factual and legal basis for his ineffective assistance of counsel claim prior to his direct appeal. The discovery Johnson requested is cumulative of the information presented to this court and the appellate court regarding the confinement conditions of Felipe, Yousef and Jones. Therefore, Johnson fails to show good cause for the default.

Nor can Johnson show he was prejudiced by his counsel's failure to raise his ineffective assistance of counsel claim on direct appeal. Prejudice depends on the merits of Johnson's ineffective assistance claim. *Belford*, 975 F.2d at 314. *See also Freeman v. Lane*, 962 F.2d 1252, 1259 (7th Cir. 1992). To show prejudice, a defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In other words, Johnson must show that if his appellate counsel had raised the claims on direct appeal, there was a reasonable probability that the claims would have been successful. *McCleese*, 75 F.3d at 1179. If counsel's actions did not prejudice Johnson, the court need not address counsel's performance. *Gray-Bey v. United States*, 156 F.3d 733, 742 (7th Cir. 1998).

**b.   Merits**

The jury unanimously sentenced Johnson to death for the killing of "Blunt" Johnson and Banks, finding beyond a reasonable doubt that the aggravating factors sufficiently outweighed all mitigating factors presented by the defense. *See* Special Findings [201, 204]. The jury unanimously rejected the defense's proposed finding that Johnson "will not be a serious and continuing danger to society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." *See* Special Findings [202, 203]. Instead, the jury unanimously found that Johnson "would commit serious acts of violence in the future which would be a continuing and serious threat to society." *Id.* Not one of the errors Johnson advances "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Green*, 527 U.S. 263, 290 (1999), *quoting Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Johnson claims he was prejudiced by his counsel's failure to investigate the law and facts necessary to subject the government's case on future dangerousness to meaningful adversarial testing. Even if Johnson's counsel impeached Vanyur's testimony by presenting additional law and

8

facts on the BOP's policies and practices, the jury might still have concluded that Johnson "would commit serious acts of violence in the future which would be a continuing and serious threat to society." *See Special Findings* [202, 203]. Indeed,

> [w]e know from cases in this court involving murders by prisoners in the control units of federal prisons, that such units cannot be made totally secure. And we know that anyone who has access to a telephone or is permitted to receive visitors may be able to transmit a lethal message in code. We also know that nothing in federal law authorizes a judge to sentence a prisoner to life in the control unit. Quite apart from the fact that 'a sentencing court has no authority to order that a convicted defendant be confined in a particular facility, must less placed in a particular treatment program,' a prison control unit is an internal disciplinary mechanism that is not intended or designed for lifetime commitment. The Bureau of Prisons could not, therefore, commit a prisoner to the control unit for life, refusing to consider circumstances that might render his joining the open population of the prison harmless, such as extreme old age or the dissolution of the gang with which he had been affiliated.

*Johnson*, 223 F.3d at 672-73 (internal citations omitted). As Vanyur testified, prisoners have developed ingenious ways to communicate both inside and outside the prison system. Tr. 2478-79. Even inmates in the control unit are allowed one 15 minute telephone call, up to five non-contact visits per month and virtually unlimited correspondence with the outside world. Tr. 2485. Although under § 3582(d), the court may order a defendant not to associate or communicate with a specified person other than his attorney, the court may enter such an order only upon a showing of probable cause to believe that association or communication is for the purpose of enabling him to participate in an illegal enterprise. Pursuant to 28 C.F.R. § 501.3(a), the Attorney General may order the BOP director to authorize a warden to house an inmate in administrative detention and limit his communications privileges "as is reasonably necessary to protect persons against the risk of act of violence or terrorism." At the time of Johnson's sentencing hearing, these "special administrative measures" or SAMs were required to be reevaluated every 120 days. Even with this additional information, the jury could have reasonably concluded there was no guarantee that the government could prevent Johnson from committing serious acts of violence in the future.

The government's concession before the Supreme Court does not change this result. *See* Memorandum, Ex. A. at 21. In opposition to Johnson's petition for *certiorari*, the government

acknowledged that Vanyur's testimony may have left the jury with "the mistaken impression that no legal authority existed to limit petitioner's communications and contacts while in prison in order to curtail his future dangerousness." *Id.* at 27. The concession does nothing for Johnson's case because as the government later points out in its opposition brief, Johnson "cannot establish that the jury 'probably' would not sentence him to death at a new sentencing hearing if it was informed" about the relevant law. Indeed, the record provides strong support for the conclusion that Johnson would have been sentenced to death even if defense counsel impeached Vanyur with the BOP's policies and practices. *See Strickler*, 527 U.S. at 294 (court may look to other support in the record for conviction and sentence).

The jury unanimously and beyond a reasonable doubt found statutory and non-statutory factors other than future dangerousness. The jury found two statutory aggravating factors with respect to the Blunt Johnson murder. Namely, Johnson caused the killing after substantial planning and premeditation and in the course of a continuing criminal enterprise that involved the distribution of drugs to persons under age 21. The jury found the same two statutory aggravating factors in connection with Banks' murder, plus the statutory aggravating factor related to Johnson's previous conviction for voluntary manslaughter using a firearm. In addition, the jury found two non-statutory aggravating factors regarding the Blunt Johnson murder: (1) Johnson ordered the murder to obstruct justice by preventing the victim from testifying; and (2) Johnson caused harm to the victim's family. The jury did not unanimously find any of the mitigating factors by a preponderance of the evidence. Based on this record, Johnson fails to establish there is a reasonable probability the outcome would have been different but for his counsel's alleged errors. Therefore, Johnson fails to establish the cause and prejudice necessary to excuse his procedural default, as well as the required prejudice necessary to establish his ineffective assistance of counsel claim. Johnson's failure to establish a colorable claim based on his proposed facts dooms his request for additional discovery.

### (2) Fundamental Miscarriage of Justice

A federal court may review a defaulted claim only if a fundamental miscarriage of justice is involved. This occurs where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 485-86. The Seventh Circuit previously rejected Johnson's arguments against imposition of the death penalty. *Johnson*, 223 F.3d at 671-74. Thus, no fundamental miscarriage of justice will result by application of the procedural default rule. Accordingly, Johnson's ineffective assistance of counsel claims are procedurally defaulted.

### 2. Trial and Sentencing - Failure to Call Certain Witnesses

Johnson claims his lawyers were ineffective for failing to call Cheryl Fletcher during sentencing to rebut the testimony of Archie Rudd regarding the circumstances leading up to Johnson's manslaughter conviction. Petition at 8-9. However, Johnson fails to provide any extrinsic evidence to support his version of Fletcher's proposed testimony. Nor does he move for additional discovery on this claim. Johnson apparently abandons this claim by failing to address it on reply. Under these circumstances, Johnson's ineffective assistance of counsel claim based on Fletcher's proposed testimony is procedurally defaulted.

Johnson next claims his lawyers were ineffective for failing to call his former lawyer, Scott Arthur, during the guilt and penalty phases of his trial. Petition at 7-8. In support of his claim, Johnson offers the affidavits of Arthur and Urdangen. Memorandum at Ex. A and B. The government does not dispute that Johnson may raise this claim for the first time in his § 2255 motion. Therefore, Johnson's ineffective assistance of counsel claim based on Arthur's proposed testimony is considered on the merits.

Johnson fails to explain how Arthur's testimony "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290. According to Johnson, Arthur's testimony was needed to refute the government's assertions that he ordered the murders of Blunt Johnson and Banks and ordered Roger Stewart to threaten a possible government witness. As the government points out, Arthur's claim that he did not tell Johnson that

11

Banks was cooperating with the government does not refute the government's evidence that Johnson suspected Banks of cooperating and told Stewart that he wanted Quan Ray to kill him. Response at 42, *citing* Tr. 1030-32. Johnson fails to respond to this argument on reply. Nor does Johnson respond to the government's argument that Roger Stewarts' testimony regarding Johnson's order to threaten a possible government witness was a "drop in the bucket" on future dangerousness compared to the testimony elicited regarding the murders and beatings that actually occurred on Johnson's orders.

Finally, Arthur does not deny in his affidavit that he told Johnson about Blunt Johnson's plans to cooperate. In reply, Johnson claims an evidentiary hearing is necessary because counsel "believes if given the opportunity to testify at a hearing in this matter, Arthur will deny having supplied information to Johnson that Blunt Johnson was cooperating with the government." Reply at 39. Counsel's unsupported belief is not enough to require an evidentiary hearing. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989)("Mere unsupported allegations cannot sustain a petitioner's request for a hearing"). Therefore, Johnson's claims based on counsel's failure to call Scott Arthur at trial or sentencing fail on the merits.

**B.** *Brady* **Violation (Ground II)**

Johnson claims the government failed to turn over evidence regarding BOP practices at the time of his sentencing hearing in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Johnson did not raise this issue on direct appeal. A *Brady* violation may only be raised for the first time in a collateral proceeding where support for the claim was not discovered prior to direct appeal. *See Strickler*, 527 U.S. at 280-82. Johnson was aware of the BOP practices applied to Felipe, Yousef and Jones prior to his appeal. Evidence that the BOP applied the same policies and practices to other federal inmates is cumulative of information already in Johnson's possession at the time of his direct appeal. As discussed in relation to his ineffective assistance of counsel claim, Johnson has not demonstrated cause for or prejudice from failing to raise the claim earlier.

12

Even if Johnson's claim survived a procedural default, he fails to establish a *Brady* violation. Under *Brady* and its progeny, the prosecution has an affirmative duty to disclose evidence that is both favorable to the defense and material to either guilt or punishment. *Kyles*, 514 U.S. 419, 432-34 (1995). In order to establish a *Brady* violation, Johnson must show: (1) the government suppressed evidence; (2) the evidence was favorable to his defense; and (3) the evidence was material to an issue at trial. *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001). The government does not contest Johnson's contention that evidence relating to BOP practices was favorable to the defense. Rather, the government argues Johnson cannot establish either the first or third element of a *Brady* violation.

To establish that the government suppressed evidence, Johnson must demonstrate: (1) the government failed to disclose known evidence before it was too late for him to make use of the evidence; and (2) the evidence was not otherwise available to him through the exercise of reasonable diligence. *Collier v. Davis*, 301 F.3d 843, 850 (7th Cir. 2002). The court need not determine whether the government knew of the BOP's practices at the time of the sentencing hearing, through Vanyur or otherwise, because Johnson could have discovered the evidence through reasonable diligence. *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997). For example, counsel could have discovered the circumstances surrounding Felipe's confinement conditions, including the district court's reliance on § 3582(d) in sentencing, through simple electronic research. A defense lawyer's failure to conduct research does not qualify as "suppression" for purposes of *Brady*.

In addition, Johnson fails to demonstrate the information was material to an issue at trial. Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The materiality standard under *Brady* is the same as the prejudice standard for an ineffective assistance of counsel claim under *Strickland*. *See Id.* at 694 (the standard of materiality applicable to withheld impeachment evidence was adapted from the formulation of prejudice in *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). For the same reasons Johnson

13

failed to establish prejudice for his ineffective assistance of counsel claim, he fails to establish materiality for his *Brady* claim. Johnson's failure to establish a colorable *Brady* claim precludes discovery on this issue.

## C. Eighth Amendment Violation Based on Inaccurate Testimony (Ground III)

Johnson claims his death sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment. In making this argument, Johnson once again takes issue with Vanyur's testimony. In response, the government argues Johnson's Eighth Amendment claim is procedurally defaulted. Johnson fails to address the government's procedural default argument in his reply.

Johnson fails to establish cause for failing to raise his Eighth Amendment argument earlier. Indeed, Johnson argued on direct appeal that Vanyur's testimony was false or misleading. The Seventh Circuit rejected the premise of Johnson's Eighth Amendment claim, finding that "the warden's testimony, though it did not track the regulations exactly, was not false. The impression conveyed of practice and policy was correct." *Johnson*, 223 F.3d at 672. Based on the Seventh Circuit's decision, Johnson cannot establish prejudice.

## D. Fifth and Sixth Amendment Violations (Grounds IV and V)

Pursuant to 18 U.S.C. § 3593(c) of the FDPA, evidence may be introduced at a capital sentencing hearing without regard to the Federal Rules of Evidence, except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues or misleading the jury. Johnson claims § 3593(c) violates the Fifth Amendment due process clause and the Sixth Amendment confrontation clause by allowing the use of hearsay evidence in the penalty phase of a capital trial. Johnson further argues that the indictment fails to allege all of the statutory aggravating factors relied on by the government at sentencing, in violation of the Fifth Amendment indictment clause. Johnson did not make these arguments on direct appeal. The government contends Johnson's claims are procedurally defaulted and fail on the merits. The

14

court need not reach the government's procedural default argument, because Johnson's claims fail on the merits.

Johnson's Fifth and Sixth Amendment claims are premised on the Supreme Court's recent decision in *Ring v. Arizona*, 122 S.Ct. 2428 (2002). In *Ring*, the Supreme Court held that facts increasing the statutory maximum punishment in a capital case must be proved beyond a reasonable doubt. *Id.* at 2448, *citing Apprendi v. New Jersey*, 530 U.S. 466, 494 n. 19 (1990). Both parties' arguments center on whether *Teague v. Lane*, 489 U.S. 288 (1989), bars the retroactive application of *Ring* to Johnson's case. Under *Teague*, developments in the law occurring after Johnson's sentence became final apply on collateral review only in rare circumstances. In their arguments, neither party cites the Seventh Circuit's recent decisions in *Trueblood v. Davis*, 301 F.3d 784, 788 (7th Cir. 2002) and *Szabo v. Walls*, 313 F.3d 392, 398-99 (7th Cir. 2002). In *Trueblood*, the Seventh Circuit accepted the parties' agreement that *Ring* could not be considered on collateral review because the Supreme Court had not yet held *Ring* to be retroactive. *Trueblood*, 301 F.3d at 788, *citing Tyler v. Cain*, 533 U.S. 656, 662-64 (2001). Less than four months later, the Seventh Circuit held that *Ring* does not apply retroactively on collateral review:

> Unfortunately for [petitioner], however, in order to apply *Apprendi* to capital sentencing, *Ring* first had to overrule *Walton v. Arizona*, 497 U.S. 639, 110S.Ct. 3047, 111 L.Ed.2d 211 (1990). Given *Teague*, it is *Walton* and not *Ring* that governs [petitioner's] claims on collateral attack. *See Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002)(*Apprendi* does not apply retroactively on collateral attack).

*Szabo*, 313 F.3d at 399. *See also Ring*, 122 S.Ct. 2428, 2449 (O'Connor, J., dissenting)(noting that decision would not benefit the majority of prisoners already on death row because they would be barred from raising the issue retroactively on federal collateral review). At the time of Johnson's sentencing, the government was entitled to proceed as it did. *Id.* at 399, *citing Walton v. Arizona*, 497 U.S. 639 (1990) and *Williams v. New York*, 337 U.S. 241 (1949). Therefore, Johnson's Fifth and Sixth Amendment claims based on *Ring* lack merit.

## F. Eighth Amendment Violation Based on Mental Retardation (Ground VI)

Johnson claims his execution violates the Eighth Amendment because he may be mentally retarded. *See Atkins v. Virginia*, 122 S.Ct. 2242 (2002)(Eighth Amendment precludes capital punishment of mentally retarded defendants). The government concedes that *Atkins* applies retroactively on collateral review because it excludes a class of defendants from eligibility for the death penalty. Response at 44, n. 7, *citing Penry v. Lynaugh*, 492 U.S. 302, 329-330 (1989). At sentencing, Johnson offered evidence that he is more likely a member of the brain impaired or dysfunctional population than the normal population. Tr. at 2122. Several tests performed on him rated all aspects of his intelligence quotient ("IQ") and problem-solving skills at the upper end of the mentally deficient or defective range. *Id.* at 2120-22. Johnson scored 79 for his verbal IQ, 74 for his performance IQ, and 76 for his overall IQ. *Id.* For problem-solving, Johnson's scores ranged from the bottom 2 to 3% of the population to the bottom 10% of the population. *Id.* at 2121-22. However, "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." *Atkins*, 122 S.Ct. at 2250. Johnson's adaptive skills were never tested. Discovery motion at 12. With this additional evidence, Johnson may be able to state a colorable Eighth Amendment claim based on mental retardation.

For the most part, Johnson's discovery requests are not designed to obtain evidence necessary to support his Eighth Amendment claim. Johnson first requests government documents regarding its position on mental retardation in general. Discovery motion at 13, items 1, 2 and 5. Johnson does not explain how this information would establish his own mental deficiency under *Atkins*. Johnson next requests the government's evidence regarding his own mental deficiency. *Id.*, items 3 and 4. The government denies having such information. Response to discovery motion at 5. Finally, Johnson requests that the court "approve funding for the defense" to retain psychiatric and/or psychological experts to evaluate Johnson's previous testing and to conduct any additional testing that may be necessary. Discovery motion at 13; Reply at 40. Surprisingly, the government takes no

16

position on Johnson's generalized request for funds. Response to discovery motion at 6. Neither party provides a legal basis for the court to approve an unspecified amount of money for unhampered use by the defense. To the contrary, Rule 35(a) provides:

> When the mental or physical condition of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. **The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.**

[Emphasis added.] Johnson's motion for discovery does not comply with the requirements of Rule 35(a). Therefore, Johnson's tardy discovery motion is denied without prejudice to his right to bring an appropriate Rule 35(a) motion. The § 2255 motion is denied as to Ground VI without prejudice, subject to renewal if a report issued pursuant to Rule 35(b) supports his claim under *Atkins*.

### G.    Fifth Amendment Violation based on Race Disparity (Ground VII)

Johnson claims the federal capital sentencing scheme is administered in a racially discriminatory manner. In order to prove an equal protection violation under the Fifth Amendment, Johnson must prove that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985). The government does not contest Johnson's showing of a discriminatory effect through evidence that the government could have sought the death penalty for other similarly situated defendants, but did not. *See* Memorandum at Ex. K. *See also United States v. Armstrong*, 517 U.S. 456, 468-69 (1996). Rather, the government claims Johnson cannot establish that his selection for death penalty prosecution was motivated by a discriminatory purpose.

Johnson has not demonstrated that the government acted with a discriminatory purpose when it selected him for death penalty prosecution. Johnson offers only statistics to demonstrate that the government intentionally discriminated against him. However, "statistics may not be the sole proof of a constitutional violation." *Chavez v. Illinois State Police*, 251 F.3d 612, 647-48 (7th Cir. 2001).

*See also McClesky v. Kemp*, 481 U.S. 279, 293 n. 12 (1987)(only in "rare cases [has] a statistical pattern of discriminatory impact demonstrated a constitutional violation . . ."). Johnson does not offer any additional evidence supporting a constitutional violation. Under these circumstances, Johnson is not entitled to discovery on his equal protection claim. *Armstrong*, 517 U.S. at 468-69.

### F.     Juror Information (Ground VIII)

Johnson claims that extra-record information, misinformation and/or considerations may have infected the penalty phase jurors. The court previously denied Johnson's request to contact jurors, as well as his motion to review confidential juror questionnaires. *See* Minute Orders dated August 22 and September 27, 2002 entered in Case No. 96 CR 379. To date, Johnson has not provided evidence of any improper outside contact with the jury or identified any constitutional violation that could be proven through the use of the juror questionnaires. Under these circumstances, Johnson is not entitled to discovery. *See U.S. ex rel. Blankenship v. Circuit Court of Cook County*, 59 F. Supp. 2d 736, 739 (N.D. Ill. 1999), *quoting Calderon v. U.S. Dist. Court for the Northern Dist. Of California*, 98 F.3d 1102, 1106 (9th Cir. 1996)("A habeas petition may not use discovery for 'fishing expeditions to investigate mere speculation'").

## III.    Motion for New Trial

Johnson's petition is based in part on Fed. R. Crim. P. 33. As the government points out, a motion for new trial based on newly discovered evidence must be made within three years of the verdict. Fed. R. Crim. P. 33. The verdict in this case was returned on November 4, 1997, but Johnson's petition was not filed until September 30, 2002. Johnson abandoned this basis for his petition by failing to address the issue in his reply. Johnson's petition is denied to the extent it is based on Fed. R. Crim. P. 33.

## CONCLUSION

Johnson's § 2255 petition is denied with prejudice as to Grounds I-V and VII-VIII. As to Ground VI, Johnson's petition is denied without prejudice to his right to bring an appropriate Rule 35(a) motion.

March 11, 2003

ENTER:

Suzanne B. Conlon
United States District Judge