UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA      )
                                     )
    vs.                              )    No.  02 C 6998
                                     )    Judge William J. Hibbler
DARRYL JOHNSON           )

**GOVERNMENT'S RESPONSE TO THE SUPPLEMENTAL SUBMISSION**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds to defendant's Supplemental Submission as follows:

Defendant has filed a Supplemental Submission in support of his ineffective assistance of counsel claim, consisting of a page-and-a-half of argument with seven exhibits attached. The first exhibit, Exhibit A, is an affidavit from Jill Miller, a clinical social worker and capital case mitigation specialist who was hired by the trial defense team two months after defendant was indicted to assist in preparing evidence in mitigation for the sentencing hearing. She asserts that the defense team did not pursue several leads she developed for mitigating evidence, gave her little direction in terms of what sort of evidence they wanted to focus on, and were generally unprepared to present a persuasive case in mitigation when the time came. Attached to the affidavit are several memoranda she prepared for the defense team before the trial documenting what she did, what she was unable to do, and her concerns that the case in mitigation was being neglected. Exhibit B is Miller's curriculum vitae. Exhibit C is a Johnson family chronology going back to the births of defendant's

grandparents. Exhibits D, E, and F are more memoranda from Miller to the defense team along the same lines as the memoranda attached to the affidavit in Exhibit A. Exhibit G is the affidavit of Juliet Yackel, an attorney who shared office space with defendant's lawyers around the time of the trial, and who was hired to work with Miller on preparing the case in mitigation. She asserts that crime rate statistics for the area including the Robert Taylor Homes, where defendant spent part of his childhood, would have bolstered the evidence that defendant was exposed to a great deal of violence in the community where he grew up.

Defendant states that these exhibits present "a raft of weighty mitigation issues which were, alternatively, either unexplored, underdeveloped, not presented to the jury at the penalty phase, or some combination thereof." Supp2. There is no effort to compare the mitigating evidence that was presented to the jury with the evidence Miller's memos suggest might have been presented, to show what avenues were opened to counsel, the ones they pursued, and the ones they ignored.

### The Supplemental Submission Is Untimely.

Defendant's conviction became final on October 1, 2001, when his *certiorari* petition was denied. *Johnson v. United States*, 534 U.S. 829 (2001). See *Clay v. United States*, 537 U.S. 522, 527 (2003) (conviction final when *certiorari* denied or time to file petition lapses). Under 28 U.S.C. § 2255, ¶ 6, he had one year from that date within which to file a timely § 2255 motion. He filed a timely motion on September 30, 2002. That motion raises an ineffective assistance claim pertaining to the defense team's preparation for and performance

at the sentencing hearing. The claim is that defense counsel should have discovered the statute and regulations providing for Special Administrative Measures (SAMS) – the ability of the Bureau of Prisons to house an inmate in solitary confinement, *i.e.*, a control unit, and restrict his ability to communicate with anyone, on a showing that without these restrictions the inmate poses a danger to others. This information, and the few examples of cases in which SAMS had been implemented at the time of defendant's sentencing hearing, could have been used to impeach rebuttal witness John Vanyur's testimony that defendant likely would be housed in the general population of a maximum security prison with the ability to communicate with anyone, limited only by his ability to pay for phone calls.

The Supplemental Submission, filed on February 28, 2008, more than five years after the deadline for a § 2255 motion, seeks to add on to the ineffective assistance claim a further argument that defense counsel inadequately developed the case in mitigation, despite being shown the way by Miller. This addition is barred by the 1-year limit, because amendments to a § 2255 motion filed after the limitations period lapses must relate back to the timely filed claim, *Mayle v. Felix*, 545 U.S. 644, 650 (2005), in the sense that there is "a common core of operative facts uniting the original and newly asserted claims." *Id.* at 659 (internal quotations omitted). Here, the newly asserted claim has no operative facts in common with the original. It has nothing to do with Vanyur's testimony, or SAMS, or the ability of the government to house defendant in isolation so as to mute his ability, as a high-ranking gang leader, to order others to commit violent acts.

Fed R.Civ.P. 15 governs amended and supplemental pleadings, and Rule 15(c) states that an amendment or supplement "relates back" to the original pleading if it "arose out of the conduct, transaction, or occurrence set forth" in the original pleading. The purpose of the Rule is to relax, but not obliterate statutes of limitations. *Felix*, 545 U.S. at 659. Unlike most civil litigation, where notice pleading is sufficient, a § 2255 motion requires some fact pleading. *Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002). Rule 2(b) of the Rules Governing Section 2255 Proceedings provides that a § 2255 motion "must . . . specify all the grounds for relief available to the moving party [and] state the facts supporting each ground." Failure to do so means that a new ground raised after the limitations period has expired and which does not relate back to the original ground is barred. *Felix*, 545 U.S. at 655-656. Relation back in this context means that the new ground and the original must both be based on "a common core of operative facts." *Id.* at 659 (internal quotations omitted). "Each separate congeries of facts supporting the grounds for relief . . . would delineate an 'occurrence'" within the meaning of Rule 15(c). *Id.* at 661. The new claim here is outside the boundaries delineated by the original.

The time limits for § 2255 motions reflect the judgment of Congress that at some point, there must be finality to criminal judgments. *Felix*, 545 U.S. at 662. Allowing a defendant to do what defendant has done here – hold back a potential ground for relief he knew about before he filed his original § 2255 motion, and then, before judgment is entered against him, add it to the mix, would effectively undo the time limits on filing § 2255

motions.  *Id.* at 662-663.[1]

**The Claim Raised in the Supplemental Submission Is Waived**.

As noted above, defendant makes no effort to detail the evidence that was presented at the sentencing hearing and compare it to that made available by Miller, to show deficient performance and prejudice.  To the extent that he contends certain investigations should have been performed but were not, he presents no new evidence that would have been discovered by those investigations.  Presentation of an argument like this to the Court of Appeals would constitute a waiver, for failure to develop it, and it is no answer to attempt further development in a reply.  *United States v. Useni*, 2008 WL 451303 at *17-18 (2008). The claim raised in the Supplemental Submission should be deemed waived.

**The Supplemental Submission Does Not Establish Ineffective Assistance.**

Defendant argues that "a proper investigation and presentation of mitigating evidence is absolutely essential in capital cases," citing *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Wiggins v. Smith*, 539 U.S. 510 (2003).  Supp2.  This overstates the case.  Counsel must make reasonable strategic decisions about what investigations to perform, what investigations need not be performed, and what evidence, if any, should be presented.

---

[1]Defendant does not claim that the facts supporting this claim are newly discovered, and that the claim is timely under § 2255 ¶ 6(4).  He is in a poor position to do so now.  The Miller memoranda were provided to defense counsel before trial.  Counsel now representing defendant were required to exercise due diligence in discovering evidence to support the § 2255 motion prior to the October 1, 2002 filing deadline, see ¶ 6(4), and they had access to trial counsels' files.  Miller's affidavit is dated February 27, 2008, but the evidence supporting the new claim is the memoranda, all dated 1997.

*Strickland v. Washington*, 466 U.S. 668, 690-691 (1984). *Strickland* itself was a capital case, and the claim was that counsel's performance was deficient because he presented *no* evidence in mitigation at the sentencing hearing. *Id.* at 672-675. The district court denied habeas relief, but the Fifth Circuit, *en banc*, reversed. *Id.* at 678-679. The Supreme Court, in turn, reversed the Court of Appeals, holding that the sentencing hearing was fundamentally fair and that habeas relief was properly denied. *Id.* at 700-701. *Strickland* was decided on May 14, 1984, and rehearing was denied on June 25, 1984. 466 U.S. 668. David Leroy Washington was executed by the state of Florida on July 13, 1984.[2]

Seventeen witnesses testified on defendant's behalf in mitigation at the sentencing hearing. They included his brother, Andre Johnson, nine years his senior, and Brenda Smith, his mother, who testified regarding defendant's childhood, the prevalence of gangs and violence in the neighborhoods they lived in, the father's alcoholism and physical abuse of the mother, and how defendant got sucked into the gang life. Tr2019-56; 2364-2420. His sister, Sharon Creswell, testified about defendant's learning disability, and his love for her children. Tr2068-76. A former high school teacher also testified about his learning disability, and that he was a lovable child. Tr2167-76. Another sister, Kimberly Williams, testified that defendant loved his own children and was an attentive father, and that he lamented the impossibility of simply walking away from the gang. Tr2180-91. A cousin testified that defendant said he could not leave the gang alive. Tr2198-2202.

---

[2]http://en.wikipedia.org/wiki/List_of_individuals_executed_in_Florida

Other cousins and a nephew testified that defendant was good with children, and stressed the importance of working hard in school and getting good grades. Tr2227-42. A former girlfriend testified that defendant helped her out of an abusive relationship, got her to stop using drugs, and encouraged her schoolwork. Tr2205-07.

Dr. Michael Gelbort, a neuropsychologist, testified that defendant was borderline mentally defective, with an IQ of 76. Tr2099-2123. Kathleen Kostelny, an expert on child development, testified about the effects on children of witnessing violence in the home and in the community. 2343-56. Finally, of course, there was the testimony of Dr. Mark Cunningham, which concerned the circumstances of confinement in the control unit at ADX Florence. Tr2282-97. He also testified regarding actuarial studies showing that violent crime is a young man's game, and the after age 30, the incidence of violent crime drops. 2265-82. Defendant was 33 years old at the time of the sentencing hearing. Tr2020.

The government disputed very little of this. The rebuttal focused on Dr. Cunningham's testimony that "conceivably" (Tr2287), defendant could be housed for life in the control unit at Florence. John Vanyur testified about the BOP's procedures for assigning inmates to prisons (Tr2462-93), and Craig Trout testified about how the BOP monitors gang members in the system and keeps track of incidents involving gangs. Tr2509-36. The only other rebuttal witness was an agent who authenticated a wiretap tape of defendant talking on the phone about bond money during a family gathering where children were present. Tr2428-35. A psychologist was called, but withdrawn. Tr2438.

Defendant submitted a list of 24 mitigating factors for the jury to consider in relation to the murder of "Blunt" Johnson, and 25 in relation to the murder of Charles Banks. R201, 203.

The Miller affidavit catalogues several possibilities for investigating potential mitigating evidence that were not pursued. They include information about Chicago street gangs and why young men join them (¶¶8, 12), the pressure to join gangs in prison for protection (¶13), what happened to defendant in Menard Penitentiary when he served time for voluntary manslaughter (¶13), why the judge who sentenced him for that crime imposed the minimum sentence (¶ 16), what the girlfriend of the victim of that crime might have testified about (¶¶17, 18), and more detail about his father's alcoholism and abuse of his mother (¶20). However, it is not enough to show either deficient performance or prejudice under *Strickland* simply to say that more could have been done. Defendant must produce the evidence that was not presented, and demonstrate that there is a reasonable probability that the evidence would have changed the outcome, 466 U.S. at 689, 693, and defendant has not done this.

Defendant seeks the granting of his § 2255 motion, or alternatively, an evidentiary hearing. If the Supplemental Submission is not time-barred or waived, then an evidentiary hearing is necessary. Counsel are presumed to have made reasonable strategic decisions about how to present the case in mitigation until defendant produces evidence to overcome the presumption. *Strickland*, 466 U.S. at 689. There can be no granting of relief until trial

defense counsel has an opportunity to explain their decisions.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By: /s/ David E. Bindi
   DAVID E. BINDI
   Assistant U.S. Attorney
   219 South Dearborn Street
   5th Floor
   Chicago, Illinois 60604
   (312) 886-7643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    )
    vs.    )    No.  02 C 6998
    )    Judge William J. Hibbler
DARRYL JOHNSON    )

### NOTICE OF FILING

To:    Terrence Campbell        Lorinda Meier Youngcourt
    Cotsirilos, Tighe & Streicker, Ltd.    P.O. Box 206
    33 North Dearborn Street    Huron, Indiana 47437-0206
    Suite 600
    Chicago, Illinois 60602

PLEASE TAKE NOTICE that on Wednesday, March 12, 2008, I caused the foregoing GOVERNMENT'S RESPONSE TO THE SUPPLEMENTAL SUBMISSION, service of which is made upon you, to be filed.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:    __/s/ David E. Bindi_____
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643