IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**PETITIONER'S MOTION FOR LEAVE TO FILE
APPLICATION FOR FUNDS FOR EXPERT ASSISTANCE AND
NECESSARY INVESTIGATION *EX PARTE* AND UNDER SEAL
AND MEMORANDUM OF LAW IN SUPPORT**

**I. MOTION**

Defendant, Darryl Lamont Johnson, through undersigned counsel, respectfully moves the

Court, pursuant to 18 U.S.C. § 3599(f), for leave to proceed *ex parte*, *in camera*, and on a sealed

record with regard to his applications for expert assistance and necessary investigation, for the

reasons set forth below. Mr. Johnson requests that the Court order the Clerk to file all motions,

documents, and exhibits submitted in connection with such application under seal, and that the Court

hold such documents *in camera* for review exclusively by the Court.

**II. MEMORANDUM OF LAW IN SUPPORT**

    **A. Background**

Following a jury trial in the Fall of 1997, Darryl Johnson was convicted of numerous counts

of continuing criminal enterprise, two counts of murder, and various drug charges. After a

sentencing hearing, the jury deliberated for thirteen hours before returning a death sentence. After

post-trial hearings, Mr. Johnson was sentenced to death on July 27, 1998. Mr. Johnson's convictions

and sentences were affirmed on appeal. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). The Supreme Court of the United States denied Mr. Johnson's Petition for Writ of *Certiorari* on October 1, 2001. *Johnson v. United States*, 534 U.S. 829 (2001). Undersigned counsel were appointed to represent Mr. Johnson in post-conviction proceedings pursuant to 18 U.S.C. § 2255, the instant case.

The primary issues being litigated at this point consist of the following: (1) Mr. Johnson's ineffective assistance of counsel claim, based on counsel's failure to investigate, impeach and/or rebut the testimony of Warden John Vanyur which was presented by the government at Mr. Johnson's sentencing hearing; (2) Mr. Johnson's Brady claim, based on the government's failure to turn over required information in its possession pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny that was inconsistent with, or contradictory to, the testimony of Warden Vanyur; and (3) a claim of potential mental retardation or other mental defect.

As the Court is aware, Mr. Johnson has raised meritorious claims in this proceeding. To provide Mr. Johnson the representation to which he is entitled under federal statutes, undersigned counsel require the assistance of experts with the special knowledge, skills, and experience necessary to develop evidence relating to the claims upon which Mr. Johnson seeks relief.

**B. Mr. Johnson's Right to Expert Assistance in This Proceeding**

It is well settled that "[t]he services of investigators and other experts may be critical in … habeas corpus proceedings, when possible claims and their factual bases are researched and identified." *McFarland v. Scott*, 512 U.S. 849, 855 (1994). The Criminal Justice Act speaks in terms of services "necessary for adequate representation," and the Anti-Drug Abuse Act uses the analogous phrase services that are "reasonably necessary." Taken together with established habeas corpus jurisprudence, the language of both Acts makes clear that Congress intended to provide

indigent prisoners, upon request, with all resources needed to discover, plead, develop, and present evidence determinative of their "colorable" constitutional claims. *McFarland*, 512 U.S. at 860; *Burris v. Parke*, 116 F.3d 256, 259 (7th Cir.), *cert. denied*, 118 S. Ct. 462 (1997).

Congress and the Supreme Court thus have both recognized that habeas corpus claims often turn on factual questions, and that "the procedures by which the facts of a case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." *Wingo v. Weddings*, 418 U.S. 461, 468, 474 (1974); *McFarland*, 512 U.S. at 855; *Townsend v. Sain*, 372 U.S. 293, 312 (1963). Therefore full development of determinative factual issues is necessary before final adjudication of habeas corpus claims, and a variety of fact-determining procedures are available to habeas corpus petitioners, including discovery, expansion of the record to include documentary evidence, and, where appropriate, evidentiary hearings. Indeed, federal courts have a duty to provide appropriate fact-development procedures whenever (1) "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief," and (2) the fact-determining procedure in question is "indispensable to a fair, rounded, development of the material facts." *Harris v. Nelson*, 394 U.S. 286, 300 (1969); *Coleman v. Zant*, 708 F.2d 541, 547 (11th Cir. 1983).

The policies favoring provision of expert assistance are obviously even stronger in capital cases than in noncapital cases because of the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland*, 512 U.S. at 85.

In the instant case, the assistance of expert witnesses and investigators are required because the reliability of Mr. Johnson's sentence is, at best, in grave doubt in light of the now admittedly inaccurate testimony by government witness Warden John Vanyur and the admittedly deficient performance of Mr. Johnson's trial counsel with respect to that testimony. (Warden Vanyur's testimony has been extensively discussed in prior filings by Mr. Johnson and, therefore, will not be recited again here.) We submit that the government's admission that Warden Vanyur's testimony was inaccurate and may well have misled the jury as to the actual authority, ability and practices of the BOP with respect to numerous prisoners thought to constitute a security risk and/or a "future danger" also proves Mr. Johnson's *Brady* claim, because the government did not turn over to the defense any information it had in its possession which was clearly inconsistent with, if not outright contradictory of, Warden Vanyur's testimony.

With respect to both of these claims, expert assistance is both necessary to properly and fairly present Mr. Johnson's claims, and will undoubtedly be of benefit to the Court by creating a more fulsome record with respect to the issues in dispute.

**C. The Right to Proceed *Ex Parte***

Given the need for expert assistance, federal statutes specifically contemplate *ex parte* requests in Mr. Johnson's situation. For example, 18 U.S.C. §3006A(e)(1) states: "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an *ex parte* application. Upon finding, after appropriate inquiry in an *ex parte* proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services." This statute (18 U.S.C. §3006A) is applicable to persons seeking relief under 28 U.S.C. §2255. *See* 18 U.S.C.

§3006A(a)(2)(B).

Further, 21 U.S.C. §848(q)(9) specifically provides that, upon a proper showing of the need

for confidentiality, a death-sentenced defendant may seek funds for post-conviction investigation in

confidence:

> Upon a finding that investigative, expert, or other services are reasonably necessary
> for the representation of the defendant, whether in connection with issues relating to
> guilt or the sentence, the court may authorize the defendant's attorneys to obtain such
> services on behalf of the defendant and, if so authorized, shall order the payment of
> fees and expenses therefor under paragraph (10). No *ex parte* proceeding,
> communication, or request may be considered pursuant to this section unless a proper
> showing is made concerning the need for confidentiality.

Courts construing the amended §848(q)(9) have held that the presence of attorney work-product in

a funding application is sufficient to necessitate *ex parte* proceedings. "[A] federal habeas petitioner

shows sufficient need for *ex parte* proceedings when his funding applications reveal information that

would be protected from disclosure under the work product doctrine." *See* Order Denying

Respondent's Motion to Unseal Petitioner's *Ex Parte* Applications for Payment of Fees and

Expenses, from *Fudge v. Calderon*, CV-95-5369 (C.D. Cal. March 24, 1997) (Davies, J.), at 6. The

work-product doctrine is firmly established by Supreme Court precedent, and supported by strong

public policy. Over fifty years ago, the Supreme Court explained the rationale supporting the

doctrine:

> [I]t is essential that a lawyer work with a certain degree of privacy, free
> from unnecessary intrusion by opposing parties and their counsel.
> Proper preparation of a client's case demands that he assemble
> information, sift what he considers to be the relevant from the irrelevant
> facts, prepare his legal theories and plan his strategy without undue and
> needless interference. That is the historical and the necessary way in
> which lawyers act within the framework of our system of jurisprudence
> to promote justice and to protect their clients' interests. This work is
> reflected, of course, in interviews, statements, memoranda,

> correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).[1]

Finally, section 848(q)(9)'s provision for *ex parte* applications serves to "level the playing field between petitioners able to purchase (and thereby not disclose to the opposing side) the usual litigation services – experts, investigators, subpoena-servers – and those forced to request payment of these services from the court." *See In re Pruett*, 133 F.3d 275, 279 (4th Cir. 1997) (citing cases and treatises).

Here, the request for expert and/or investigative assistance may well reveal work-product of defense counsel to which the government has no right, and which would not be the subject of a motion at all were it not for Mr. Johnson's indigency. Accordingly, Mr. Johnson respectfully requests the Court to grant his motion to proceed with *ex parte*, sealed applications for expert funding that will provide the Court with evidence critical to the Court's adjudication of Mr. Johnson's ineffective assistance of counsel and prosecutorial misconduct claims.

---

[1] Moreover, as a defendant in a federal case, this is the one and only habeas proceeding to which Mr. Johnson is entitled, and he maintains an ongoing interest in shielding "the theory of his defense from the prosecutor's scrutiny." *See United States v. Gaddis*, 891 F.2d 152, 154 (7th Cir. 1989) (noting that "indigent defendants, in requesting . . . the payment of [expert] witness expenses, need reveal their defense theory only to an impartial court and not to their government adversary")*; United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir.), *cert. denied*, 417 U.S. 948 (1973).

## III. CONCLUSION

For the foregoing reasons, Mr. Johnson respectfully requests that the Court grant him leave to file any and all applications for reasonably necessary funds for expert assistance and investigation in this matter *ex parte, in camera* and on a sealed record.

Respectfully submitted,

/s/  Terence H. Campbell
An attorney for Defendant Darryl Johnson

Terence H. Campbell                         Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.         Post Office Box 206
33 North Dearborn Street, Suite 600         Huron, Indiana  47437-0206
Chicago, Illinois  60602                    (812)849-9852
(312) 263-0345

## **CERTIFICATE OF SERVICE**

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

1.   Petitioner's Motion for Leave to File Application For Funds for Expert Assistance and Necessary Investigation Ex Parte and Under Seal, And Memorandum of Law in Support

was served pursuant to the District Court's ECF system as to ECF filers, including the United States Attorney's Office.

/s/  Terence H. Campbell
Terence H. Campbell