UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. 02 C 6998 |
| | ) | Judge William J. Hibbler |
| DARRYL JOHNSON, | ) | |
| Petitioner | ) | |

**GOVERNMENT'S RESPONSE TO THE RENEWED AND
AMENDED MOTION FOR DISCOVERY AND FOR LEAVE
TO APPLY FOR FUNDS FOR EXPERT ASSISTANCE**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD,

United States Attorney for the Northern District of Illinois, asserts that this Court should

deny petitioner's renewed and amended motion for discovery for the reasons that follow.

The government does not oppose petitioner's motion for leave to file an *ex parte*, under seal,

application for funds for expert assistance. However, for the reasons stated in the

government's response to the discovery motion, the expenditure of funds on the proposed

expert is unnecessary, and ought to be denied.

**Discovery Motion**

1. In his motion under 28 U.S.C. § 2255, petitioner raised a claim of ineffective

assistance of trial counsel, alleging that counsel performed deficiently "in investigating,

researching, preparing for, and confronting through the adversarial process the testimony of

Warden Vanyur." R1 at 6. The information petitioner claimed counsel should have

discovered and used in cross-examination of Warden Vanyur was **(a)** the special

administrative measures (SAMs) regulations, which allow the Attorney General to order the Bureau of Prisons to house an inmate in administrative detention and place strict limits on the inmate's ability to communicate, if it can be shown that by communication, the inmate poses a danger to others; **(b)** a statute, 18 U.S.C. § 3582(d), which allows a district court to impose the same sort of restrictive conditions on an inmate in the BOP if there is probable cause to believe that the inmate will use his ability to communicate to continue participating in the affairs of a criminal organization; and **(c)** the case of Luis Filipe, in which, prior to petitioner's sentencing hearing, the district court for the Southern District of New York ordered restrictions pursuant to § 3582(d), an order affirmed after the sentencing hearing. *United States v. Filipe*, 148 F.3d 101, 109-112 (2nd Cir. 2000). R1 at 14-22. This claim was adjudicated by Judge Conlon (R20), but subsequently reopened (R 34), and is properly before this Court. In previously ordered discovery, the government has disclosed that at the time of petitioner's sentencing hearing, the Felipe case was the only known case in which restrictions had been ordered pursuant to § 3582(d), and that SAMs had been invoked in six cases, five terrorism and one espionage.

2. Petitioner also raised in his § 2255 motion a claim that the government violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), which require the prosecution to turn over to the defense evidence in its possession which is exculpatory or impeaching, and material to an issue at trial. R1 at 48-54. The information he claimed to have been suppressed was the same information detailed

above, plus information regarding BOP inmates Thomas Silverstein and Clayton Fountain, who had been housed in solitary confinement for years, though without significant communications restrictions, because while incarcerated, they committed multiple murders of other inmates, and guards. *See* "The Caged Life," http://www.westword.com, August 16, 2007 (attached). This claim is no longer before this Court. In the March 11, 2003, Memorandum Opinion and Order, Judge Conlon rejected it on three grounds. First, she found that it was procedurally defaulted, and that petitioner had not shown cause and prejudice. Second, she found that petitioner could have discovered the SAMs, the statute, and the Felipe case on his own using due diligence, so this information was not suppressed. *United States v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008) (*Brady* only applies to evidence defendant could not have discovered on his own using due diligence). Third, she found that this evidence was not material in any event. R20 at 12-14.

3. The *Brady-Giglio* claim is fundamentally at odds with the ineffective assistance claim. If counsel performed deficiently in failing to discover this evidence on their own, which the government concedes, then it cannot have been suppressed. *Bland, supra*. Further, it is bizarre, to say the least, to speak of an Act of Congress, a set of published regulations, and a court case open to the public as having been suppressed.

4. Further still, the *Brady-Giglio* doctrine applies only to the prosecution team, *i.e.*, the U.S. Attorney's Office and the law enforcement agencies responsible for the investigation and prosecution of the case. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995);

*United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996). The BOP was not part of the prosecution team in petitioner's case. It was not involved in the investigation or the prosecution, and the BOP witnesses who testified in rebuttal at the sentencing hearing had no personal or professional stake in the outcome. Petitioner's argument on this claim assumes that the functional unit for *Brady-Giglio* purposes is not the prosecution team, but the entire United States government. This is not the law, and the cases cited by petitioner (Motion at 10) do not support this view.

a. Petitioner quotes from *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) – "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case" – but he cites no authority that those acting on the government's behalf includes those whose only role in the case is to be a witness. *Morris*, *supra*, applied *Kyles* when it held that the duty to disclose is limited to the prosecution team, and the prosecution team is the U.S. Attorney's Office and the law enforcement agencies participating in the investigation and prosecution of the case. In *Kyles*, the undisclosed evidence was in the possession of the police department that investigated the crime. 514 U.S. at 428-429.

b. In *United States v. Andrews*, 824 F.Supp. 1273, 1289-90 (N.D. Ill. 1993), the prosecutors where chargeable with knowledge of information in the possession of the MCC because they had first-hand knowledge of misconduct committed by government witnesses in the MCC, and had worked closely with MCC officials on that and a raft of other

issues concerning the witnesses. The MCC information was "readily accessible" to the prosecutors "upon reasonable inquiry." *Id.* The relationship between the prosecution and the BOP in this case is not similar, and the information petitioner now wants disclosed – which is considerably more expansive than information about SAMs, § 3582(d), and the Felipe case – is not readily available. As he himself points out (Motion at 8-9, ¶ 3), retrieval of the requested discovery cannot be done by querying computer databases, because the data is not sorted by the criteria relevant to petitioner's request. Compliance would require hand-searching individual inmate records from 1997 going backwards.

        c. *Schneider v. Estelle*, 552 F.2d 593 (5th Cir. 1977), has nothing to do with *Brady*. It holds that a habeas petitioner is entitled to an evidentiary hearing when he produces evidence that a key prosecution witness, an officer of the police department that investigated and prosecuted the case, lied about a critical fact. *Id.*, at 594-596. In *United States v. Rosner*, 516 F.2d 269 (2nd Cir. 1975), the undisclosed evidence was impeachment material on the undercover police officer who set up the sting. *Id.*, at 270-271. In *United States v. Deutsch*, 475 F.2nd 55 (5th Cir. 1973), it was the personnel file of an officer of the agency that investigated and prosecuted the case.

        5. The cases of Silverstein and Fountain are immaterial. They corroborate Warden Vanyur's testimony that restrictive conditions are typically imposed based on an inmate's conduct in custody, not on what he might do in custody or has done in the community. Tr2484-85.

6. Petitioner asks that the rejection of his *Brady-Giglio* claim be reconsidered. Motion at ¶¶ 5-6. As noted above, there was a sound basis (several, in fact) for rejecting the claim. Reconsideration of a dispositive ruling is permissible but not favored. "A judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case . . .) if he has a conviction at once strong and reasonable that the earlier ruling was wrong . . . ." *Avita v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995). Petitioner offers no reason to reopen this issue. He cannot point to anything Judge Conlon overlooked, or any intervening event that casts her ruling into question. The only thing that has changed between March 11, 2003, and now is the prejudice standard applicable to the ineffective assistance claim.

7. None of the requested discovery is relevant to the issue of whether the failure of counsel to discover the SAMs regulations, § 3582(d), and the Felipe case was prejudicial, as that term is used in *Strickland v. Washington*, 466 U.S. 668 (1984). There is no pending allegation that counsel performed deficiently in failing to find the requested discovery in time to use for impeachment of rebuttal witness Warden Vanyur, and the government does not concede such. Indeed, if petitioner were to now allege that the failure of counsel to find the requested discovery in anticipation of a rebuttal witness amounted to representation so deficient as to violate the Constitution, the government would answer that the allegation was frivolous.

8. The requested discovery is overbroad, so the information sought is not material

within the meaning of *Brady*. The request is not limited to records regarding the treatment of inmates similarly situated to petitioner, and so the information could not have been used to impeach Warden Vanyur. Petitioner wants records regarding inmates held in strict conditions of confinement for 60 days or more prior July 1998, when his post-trial motions were denied, but knowing something about the imposition of restrictive conditions of confinement based on misbehavior in custody is irrelevant here. So is knowing about the initial placement of espionage agents and mafia dons in more restrictive prisons. Affidavit at ¶¶ 6, 9. The defense theory at sentencing was that petitioner, a street gang leader, could conceivably be sent straight from court to the control unit, solitary confinement, at ADX Florence, the super maximum security prison, based solely on future dangerousness as reflected by the crime of conviction. Petitioner qualifies his discovery request by calling for records regarding restrictive conditions imposed based on future dangerousness, but he does not qualify it by calling for records of inmates sent to control units straight from the sentencing court. The fact that inmates who commit or threaten acts of violence while in custody are put in administrative segregation, or transferred to more secure prisons, to both deter and incapacitate them, is not relevant and could not have been used to impeach Warden Vanyur. This why Judge Conlon denied the original discovery motion on this claim, in part, because the requested discovery was not material. R20 at 4, 13-14. The post-trial motion sought a new sentencing hearing on the ground that Warden Vanyur's testimony was false. The false-testimony theory was premised on the contention, repeated here (Motion at 11, ¶

8), that Warden Vanyur testified that certain restrictive measures were not possible or unavailable. Judge Conlon rejected that characterization of Warden Vanyur's testimony, characterizing it as concerning BOP policies and procedures, and what was likely to happen, not what was possible or impossible. 96 CR 379 R270 at 34-38. With Warden Vanyur's testimony viewed in that light, evidence about restrictive conditions imposed on other inmates not similarly situated to defendant is not material.

9. In the section of his motion entitled "Basis for Items Requested," petitioner essentially concedes that none of the requested discovery is relevant to the pending ineffective assistance claim. Nowhere does he assert that it is. Instead, he maintains that the requested discovery is relevant to his *Brady-Giglio* claim, and that the discovery produced so far regarding inmates held in restrictive conditions of confinement is incomplete. Motion at 8-12. On June 3, 2008, this Court ordered the government to produce information regarding "any instances of either special administrative measures under the BOP regulations or statutory provisions providing for extraordinary security measures for inmates that were requested or imposed at the time of Darryl Johnson's sentencing that involved restrictions continuously." R48.[1] The government complied with that order. We turned

---

[1]Contrary to petitioner's assertion that the relevant cutoff date was the denial of the post-trial motions (Motion at 9, ¶ 5) this Court set the cutoff "at the time of Darryl Johnson's sentencing." Further, the information produced regarding no-human-contact conditions was not, contrary to petitioner's assertion (Motion at 9, ¶ 4), more restrictive than what was ordered. It was in excess of what was ordered. This Court ordered information on the imposition of SAMs and the existence of § 3582(d) orders. The no-human-contact conditions imposed on Silverstein and Fountain had nothing to do with SAMs or § 3582(d), and providing that was a bonus.

8

over information regarding instances of SAMs (five instances), and § 3582(d) orders (one case).[2] As noted above, petitioner now wants information regarding disciplinary measures taken against inmates who committed or threatened acts of violence while in custody prior to July 1998, or were initially designated to highly restrictive prisons. This goes well beyond what this Court ordered. In fact, this Court explicitly limited its order to instances where SAMs or § 3582(d) were resorted to in order to exclude routine disciplinary measures for conduct while in custody, and to tailor the discovery to what was at issue at the sentencing hearing and the post-trial motion stage in this case.

10. Petitioner asserts that the information thus far disclosed, the discovery he requests, and the affidavit former BOP Warden Mark Bezy attached to his motion "directly contradicts Warden Vanyur's testimony." Motion at 10, ¶ 7. He does not cite one statement by Warden Vanyur that is contradicted by anything. As the Court of Appeals found on direct review, Warden Vanyur's testimony was largely about practice and policy, not what was possible or impossible, and it was not false. *United States v. Johnson*, 223 F.3d 665, 672 (7th Cir. 2000).

11. Petitioner states that Bezy's affidavit details restrictive confinement measures that the BOP could use which "Warden Vanyur testified were not available in Darryl Johnson's case." Motion at 11, ¶ 8. Warden Vanyur never testified that restrictive measures were unavailable. He testified that incoming inmates were typically assigned to a more or

---

[2]We know of no relevant statutory provision other than § 3582(d), and petitioner has cited none.

less restrictive prison setting based on the crime of conviction, and an individual risk assessment, and that placement is subject to available space. Tr2471-74. Applying these policies to what he knew about petitioner, Warden Vanyur surmised that petitioner would probably be designated to a general population penitentiary. Tr2474-75. He turned out to be right. That Bezy knows of other inmates who were treated differently does not contradict Vanyur. Vanyur's testimony was mostly about practice and policy. It was about likelihood, not possibility. Bezy's affidavit is case-specific.

12. Bezy's affidavit recounts his knowledge of restrictions placed on particular inmates to reduce "future dangerousness" which policy permits to be kept in place for as long as necessary. Affidavit at ¶¶ 7, 9, 11, 12, 13, and 14. Curiously, he does not state the circumstances which prompted these measures in the instances he recalls. Specifically, he does not state that the restrictive measures were imposed based on something other than misconduct while in custody. He mentions strict conditions of confinement imposed on Silverstein and Fountain to curtail their "future dangerousness" without mentioning that the reason for it was that while they were in custody, they murdered inmates and guards. Affidavit ¶ 12.

13. Rule 6(a) of the Rules Governing Section 2255 Proceedings authorizes this Court, in the exercise of its discretion, to permit discovery to proceed under the Federal Rules of Criminal or Civil Procedure, if defendant shows "good cause" for his request, "but not otherwise." "Good cause" is established only if defendant shows that the information

10

sought is essential to an adequate factual development of the claims raised. *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997); *Henderson v. Walls*, 296 F.3d 541, 553-554 (7th Cir. 2002). Good cause has not been shown. The requested discovery is not relevant to the ineffective assistance claim, the only claim still pending, and petitioner does not assert that it is. The *Brady-Giglio* claim, and discovery on it, has already been rejected. Petitioner asks that it be reopened, but he does not argue that any part of Judge Conlon's ruling was wrong, other than to gainsay her ruling that the requested discovery is not material. The requested discovery was never in the possession of the prosecution to begin with. The authorities cited by petitioner for the proposition that the prosecution team chargeable with knowledge for *Brady* purposes extends beyond the U.S. Attorney's Office and the law enforcement agencies participating in the investigation and prosecution of the case do not support that proposition. Certainly, there is no authority that an when agency whose only contact with a case is to have one of its agents called as a witness, this imputes knowledge to the prosecutors of everything known to the agency, even if not to the agent. A hand-search of inmate files predating 1997 looking for information regarding the treatment of inmates not similarly situated to petitioner would serve no purpose. The discovery motion should be denied.

11

**Leave to File Application For Funds for Expert Assistance**

The government does not oppose petitioner's motion to file an *ex parte*, under seal, application for funds for expert assistance. Petitioner invokes 18 U.S.C. § 3599, which authorizes granting funds for expert or investigative services in § 2255 proceedings where the petitioner is under sentence of death, § 3599(a)(2), but the statute discourages *ex parte* proceedings. § 3599(f). However, as petitioner notes, 18 U.S.C. § 3006A(a)(2) and (e) allow authorization of funds for an expert in any § 2255 proceeding by way of an *ex parte* motion.

For the reasons set forth in response to the discovery motion, funds should not be authorized.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:      /s/ David E. Bindi
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

12

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
      )
   vs.       )   No.  02 C 6998
      )   Judge William J. Hibbler
DARRYL JOHNSON    )

## **CERTIFICATE OF SERVICE**

David E. Bindi, an Assistant United States Attorney, hereby certifies that pursuant to Fed.R.Civ.P. 5(a), LR 5.5, and the General Order on electronic case filing, the Government's Response to the Renewed and Amended Motion for Discovery and for Leave to Apply for Funds for Expert Assistance was served through the District Court's ECF system on the following counsel for the petitioner.

Terrence Campbell             Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.    P.O. Box 206
33 North Dearborn Street        Huron, Indiana 47437-0206
Suite 600
Chicago, Illinois 60602

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:     /s/ David E. Bindi
      DAVID E. BINDI
      Assistant U.S. Attorney
      219 South Dearborn Street
      5th Floor
      Chicago, Illinois 60604
      (312) 886-7643