IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff-Respondent ) <br> ) <br> v. ) <br> ) <br> ) <br> DARRYL LAMONT JOHNSON, ) <br> ) <br> Defendant-Movant. ) <br> ) | No. 02 C 6998 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

A jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari*. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000); *Johnson v. United States*, 534 U.S. 829, 122 S.Ct. 71, 151 L.Ed.2d 37 (2001).

Johnson then sought to set aside his sentence pursuant to 28 U.S.C. § 2255, raising among other claims an ineffective assistance of counsel claim and a claim that the government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court denied Johnson's § 2255 motion, holding that he procedurally defaulted both his ineffective assistance of counsel claim and his *Brady* violation claim because he failed to raise those claims in his direct appeal.

1

A few years after the initial ruling on Johnson's § 2255 motion, the Supreme Court announced its decision in *Massaro v. United States*, 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro*, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequentially, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim. The Court, however, did not reopen Johnson's *Brady* claim. Though Johnson's *Brady* claim is intertwined with his ineffective assistance of counsel claim, he has not formally moved the Court to reconsider the decision regarding the *Brady* claim and that claim is not currently pending.[1]

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In rebuttal, the government called an expert, a former Bureau of Prisons (BOP) warden, who testified generally about what BOP placement was likely in Johnson's case. The expert testified that typically gang leaders like Johnson do not get directly assigned to ADX-Florence but instead go to the general prison population. The expert also testified that even prisoners in strictly controlled

---

[1] Another judge in this district initially ruled on Johnson's § 2255 motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

2

environments had managed to commit crimes, including ordering the killing of other inmates. The expert also testified that the BOP could not house prisoners in such strict conditions indefinitely.

The jury rejected Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." The jury also found other aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testimony and also caused harm to the victim's family. As a result of its deliberation, the jury sentenced Johnson to death.

In Johnson's § 2255 motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the government expert's testimony to go unrebutted.

Johnson argues that, contrary to the government expert's testimony, the BOP could employ strict conditions of confinement indefinitely to alleviate the risk a particular inmate poses to society. After sentencing, Johnson learned of several procedures that the BOP utilized to control the conditions of confinement of inmates deemed to be dangerous. First, the BOP could control the conditions of confinement by employing Special Administrative Measures (SAMS) authorized by 28 C.F.R. § 501.3(a). Second, courts could order restrictions on communication and association pursuant to 18 U.S.C. § 3582(d). Johnson also learned of specific inmates subjected to such controls.

3

Johnson's trial counsel presented none of this evidence to the jury, and had he done so, the jury might not have rejected Johnson's proposed finding on future dangerousness. Now Johnson moves for discovery from the government, hoping to uncover more evidence that contradicts or impeaches the government's expert. Specifically, Johnson seeks substantial BOP records involving prisoners kept under strict conditions of confinement[2] for more than 60 days, including the Disciplinary Hearing Officer (DHO) record and the Special Investigation Supervisor (SIS) Files. Johnson also seeks the DHO and SIS files for all inmates in the "K-Unit" at USP Marion, inmates in a "side pocket" or "special cell" at Florence-ADX, inmates in the Control Unit at USP Marion, any BOP inmates in a Special Housing Unit in a maximum or high security facility, and any memoranda written by a warden, Department of Justice staff, or Attorney General staff ordering an inmate held under strict conditions of confinement.

The discovery rules applicable to other civil cases do not apply to petitions for writs of *habeas corpus*, and a petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1977). Under Rule 6 of the rules governing *habeas corpus* proceedings, a judge *may* allow discovery upon a petitioner's showing of "good cause." Rule 6 of the Rules Governing § 2255 Cases. To satisfy good cause, Johnson must put forward specific allegations that show reason to believe that he may be able to demonstrate a constitutional violation if the facts were fully developed. *Bracy*, 520 U.S. at 908-09, 117 S.Ct. 1793. The information must be essential

---

[2] Johnson does not limit these conditions to inmates subject to SAMS or orders pursuant to § 3582(d). Instead, he defines a "strict condition of confinement" as any strict limitation upon or monitoring of communication with people outside the prison whether by phone, mail or visits based on concerns regarding dangerousness or security.

to an adequate factual development of the record. *Id.* The Court, however, retains the discretion to limit the extent of discovery.

To start, the parties spend much of their respective briefs arguing about whether the U.S. Attorney's office should be charged with the knowledge of BOP wardens. This argument is misplaced, and the Court need address it only briefly. First, as noted earlier, the only claim that the Court has reopened in Johnson's ineffective assistance of counsel claim. Second, the information he characterizes as suppressed is actually scattered throughout the BOP records. Johnson admits that the BOP record keeping procedures do not even allow for a computer-generated search to locate the records he claims the government suppressed; rather, some BOP official would have to sort through individual records by hand to determine whether they fit the profile of Johnson's current request. This is not a case where, prior to trial or sentencing, Johnson made a request that the government ignored. Nor is it a case where a particular individual had specific knowledge of specific records that might have been exculpatory. Instead, Johnson seeks to charge the entire BOP with perfect knowledge of its voluminous records and impute this knowledge to all of its agents. The Court will thus limit its inquiry to whether the records Johnson seeks are essential to develop an adequate factual record with regards to his ineffective assistance of counsel claim.

Rule 6 grants the judge discretion to authorize a party to conduct discovery pursuant to the Federal Rules of Criminal or Civil Procedure. Under both the Criminal and Civil discovery rules, courts maintain the discretion to limit discovery where the evidence sought is unreasonably cumulative or unduly burdensome. *See Sizemore v. Miller*, No. 92-2098, 1994 WL 123901, * 4 (7th Cir. Apr. 7, 1994); *United States v. Reed*, 2 F.3d 1441, 1447 (7th Cir. 1994) (noting that discovery under Rule 16

is not without limit); *United States v. Garza*, 664 F.2d 135, 141 (7th Cir. 1981) (affirming court's denial of subpoena for witnesses whose testimony would be cumulative).

In this case, the Court finds that the discovery Johnson requests is both cumulative and unduly burdensome. The parties agree that Johnson's trial counsel was ineffective in failing to impeach the testimony of the government's expert regarding Johnson's future dangerousness and dispute only whether this failure prejudiced Johnson. In order to succeed on this claim, Johnson must establish that but for counsel's failure, there is a reasonable probability that a jury may have declined to reject Johnson's proposed finding on future dangerousness and reached a different outcome in its decision to sentence him to death. *Eckstein v. Kingston*, 460 F.3d 844, 848-50 (7th Cir. 2006). And because "it takes only one juror to nix a death sentence," *United States v. Johnson*, 223 F.3d at 670, that threshold is even lower here.

Johnson points to the affidavit of former a BOP Warden that contradicts much of the testimony provided by the government's expert to support his request for further discovery. The affidavit outlines a pattern of evidence that appears to contradict much of what the government's expert testified to. For example, Johnson's expert points to conditions in the Control Unit at USP Marion, where the conditions of confinement were imposed to ensure security and reduce or eliminate the inmate's risk for violence of future dangerous. Johnson's expert also points to other units, such as the I-Up Unit and the K-Unit where inmate mail might be screened or copied and telephone calls recorded. The warden avers to many examples of inmates housed under these and other conditions, all for the purpose of reducing the potential that the inmate could cause harm to BOP staff, other inmates, or the general public. The thrust of the affidavit thus paints a very different portrait of the potential to house Johnson safely upon his conviction.

The affidavit of the BOP Warden provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society. Moreover, the government has produced some information regarding other inmates held in strict conditions of confinement, also which seems to contradict the testimony of the government's expert and which could lend credibility to the testimony Johnson's expert might provide. Johnson, however, wants a more exhaustive list of each and every inmate held under any sort of strict condition of confinement.

It matters little whether more than ten inmates were confined in this manner, for at some point, the information Johnson might present to impeach or rebut the government's expert becomes cumulative. *See United States v. Jackson*, 51 F.3d 646, 652 (acknowledging the Sixth Amendment leaves courts broad discretion in limiting the extent and scope of cross-examination); *Garza*, 664 F.2d at 141 (limiting the number of witnesses a defendant may call where their testimony would be cumulative). Given the information contained in Johnson's expert's affidavit and in the discovery already provided, the Court finds that further discovery is unnecessary to develop an adequate factual record to determine whether Johnson's trial counsel's deficiency prejudiced him.

Moreover, the government points out that the records sought by Johnson are not capable of being located by means of a simple computer search. Instead, the government would have to sort through the records of inmates by hand to determine whether a particular inmate's DHO or SIS file fit the profile of what Johnson seeks. The BOP houses over 200,000 inmates. Bureau of Justice Statistics (2008), *at* http://www.ojp.usdoj.gov/bjs/pub/pdf/pim08st.pdf. While excluding from the search any inmates housed in low security penitentiaries might reduce the number of files that needed to be

reviewed by hand, Johnson's request more than probably would require the government to sort through tens of thousands of files. Where a defendant already has evidence to provide an adequate factual background to present his claim, such a gargantuan task is overly burdensome.

The Court believes that Johnson possesses sufficient information to argue that his trial counsel's failure to present evidence in rebuttal of the government's expert prejudiced him. It therefore DENIES his request for further discovery.

IT IS SO ORDERED.

5/15/09
Dated

Hon. William J. Hibbler
United States District Court