# EXHIBIT F

U.S. Department of Justice

Federal Bureau of Prisons

Washington, DC 20534

August 25, 2008

David E. Bindi
Assistant U.S. Attorney
United States Attorney's Office
for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

      Re:    United States v. Darryl Johnson, N.D. Ill., No. 02 C 6998

Dear Mr. Bindi:

This letter is written in response to your request for a response from the BOP to a court order in the above-referenced matter. Specifically, Judge Hibbler has ordered the government to turn over to Mr. Johnson's attorneys information believed to be maintained in the records of the Bureau of Prisons (BOP) regarding instances of <u>formal restrictions</u> being placed on the communications privileges of BOP inmates. As outlined in your letter dated June 18, 2008, the order is limited to instances of formal restrictions on communications imposed prior to Mr. Johnson's sentencing hearing, which began on November 6, 1997, and concluded on November 17, 1997. In responding to the court's order, I have taken the following actions.

(1)     On June 27, 2008, your letter and court order were forwarded to Dominique Raia, Senior Counsel in the Legislative and Correctional Issues (LCI) Branch, to determine whether she had any responsive information. On July 10, 2008, Ms. Raia provided you with an e-mail regarding the number of special administrative matters (SAMs) in the BOP prior to November 17, 1997.

(2)     Soon thereafter, I discussed with Ms. Raia ideas for obtaining information about communication restrictions ordered by the district courts pursuant to 18 U.S.C. §3582, or any other similar statutory or other regulatory measures. She suggested that I speak to a Research Analyst for the BOP and our Correctional Programs Division to see if they have this information. She also recommended that I speak with Chris Synsvoll, Supervisory Attorney at the Consolidated Legal Center, Florence, Colorado, and to Linda Thomas, Administrator of the Correctional Services Branch with regard to the request pertaining to how many BOP inmates were housed under no-human-contact conditions, not including normal

disciplinary segregation.

(3) I initially spoke with Randy Etemick, Administrator of the Correctional Programs Branch, with regard to any information he may have concerning the court order. He did not have any responsive information, and referred me to Linda Thomas of the Correctional Services Branch.

(4) On August 18, 2008, I e-mailed Ms. Linda Thomas, Administrator of the Correctional Services Branch requesting information on whether she was aware of any BOP inmates other than Thomas Silverstein and Clayton Fountain who were subject to similar restrictions. Ms. Thomas stated that the Correctional Services Branch does not have any information that would be responsive to this request. Ms. Thomas had no additional recommendations from what I had already.

(5) I contacted Jennifer Batchelder, Research Analyst for the BOP in order for her to determine whether these type of restrictions had been tracked by the BOP. She suggested that I speak to Ron Riker at the Designation Sentence Computation Center (DSCC), located in Grand Prarie, Texas, to find out if there are any codes in our BOP database that are used for tracking these restrictions. Mr. Riker identifed several basis of change codes which I provided to Ms. Batchelder. Ms. Batchelder then provided this information to William Saylor, the Director of Research and Evaluation for his opinion. Mr. Saylor agreed that the codes identified by Mr. Riker are not relevant to obtaining information on communication restrictions as they are applied when an inmate's sentence is changed. Based on the input she received from Mr. Saylor, Ms. Batchelder recommended that we speak to Mr. Rowles from the Correctional Services Branch for his input.

(6) On August 4, 2008, I met with Mr. Rowles the Administrator of the Central Office Intelligence Section with regard to any inmates who were placed on court imposed communication restrictions prior to November 17, 1997. Beginning in January, 2002, the Central Office Intelligence Section began compiling a monthly report identifying, by facility and category of restriction, inmates who have SAMs, court imposed restrictions, or restrictions agreed to during plea negotiations. The first report shows two inmates as having court ordered restrictions. Inmate Luis Felipe, Register Number 14067-074, was the only inmate listed in this report in which the court imposed restrictions prior to November 17, 1997. All of the other reports that were provided to me listed inmates names whose restrictions were imposed by the court after November 17, 1997. In compiling these reports, the intelligence section relies upon the SENTRY assignment loaded by field or other Central Office staff and does not verify the court order, request copies of any court documents, or verify the assignment in SENTRY. Thus, it is entirely probable that other inmates may be or have been in Bureau of Prisons custody with court

2

imposed communication restrictions that they are not aware of. Additionally, Kevin Schwinn, Chief of Intelligence Section at Central Office indicated that his office does not track those individuals with similar restrictions to inmates Silverstein and Fountain. Mr. Schwinn was unaware of anyone having this information.

(7) Mr. Schwinn also provided me with the SENTRY assignment for inmates with court ordered communication restrictions. He was unaware of when this SENTRY assignment was created. I provided this information to Ms. Batchelder. She ran a search and provided me with a list of inmates who are subject to court ordered communication restrictions. This list included seven inmates names. Inmate Luis Felipe, Register Number 14067-074, was the only inmate listed in this report in which the court imposed restrictions prior to November 17, 1997.

(8) Based on Ms. Raia's recommendation, I contacted Chris Synsvoll, Supervisory Attorney for the Consolidated Legal Center, located in Florence, Colorado, to determine whether he had any responsive information. He indicated that Luis Felipe is the only inmate who is currently housed at the Administrative Maximum, Florence, Colorado (ADX) whose restrictions were imposed prior to November 17, 2007.

(9) Mr. Synsvoll also indicated that he is not aware of any inmate being housed under a no-human-contact status. Rather, inmates such as Thomas Silverstein and Clayton Fountain were housed under restrictive conditions of confinement to minimize their impact on security and orderly running of the institution. Even with that assignment, their access to programs and communication (telephone, correspondence, and visitation) was handled in accordance with BOP program statements.

(10) Since Mr. Synsvoll was doubtful that his list was exhaustive, he suggested that I contact the DSCC to see if they have a mechanism for tracking these type of restrictions. Based on Mr. Synsvoll's recommendation, I contacted Sonya Cole who is the Assistant General Counsel assigned to the DSCC. She indicated that the DSCC has no responsive materials prior to November 6, 1997 because it came into existence in 2005, and records of such communication restrictions are not and have never been maintained at the DSCC. Ms. Cole suggested that I contact each Regional Counsel and Regional Correctional Programs Administrator to see if they may still have any responsive documents.

(11) On August 5, 2008, I e-mailed all six Regional Counsels requesting responsive documents and provided them with a copy of your letter and the court order. I asked them to check with their Regional Correctional Programs Administrator for responsive documents. All six Regional Counsels did not have any responsive documents. In fact, Hank Sadowski, Regional Counsel for the Northeast Region,

3

recalled involvement in the § 3582 (d) order and the appeal of that order in the case of United States v. Felipe, 148 F.3d 101 (2nd Cir.), cert. denied, 525 U.S. 907 (1998). At that time, he remembers, to the best of his recollection, that this was the first time a court utilized 18 U.S.C. § 3582(d). Mr. Sadowski recommended that I speak to Daryl Kosiak, former Regional Counsel for the North Central Region, regarding his recollection. On August 20, 2008, I spoke with Mr. Kosiak who explained to me that to his knowledge inmate Felipe's case was the first time a court had utilized 18 U.S.C. § 3582 (d).

Based on the above steps that I have taken in response to the court order and your letter, aside from inmate Luis Felipe, no other inmates have been identified prior to November 17, 1997, who are or were subject to formal restrictions in their ability to communicate and associate with others, based on § 3582(d), or any similar statutory or regulatory provision addressing long-term security problems, not including normal disciplinary segregation. As discussed above, inmates Thomas Silverstein and Clayton Fountain did receive visits, and had mail and telephone access.

I trust this has been responsive. If you have any questions, or need additional information, please contact me at (202) 616-7706.

Sincerely,

Ann H. Zgrodnik
Senior Counsel
Litigation Branch

4