IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**PETITIONER'S CORRECTED FINAL REPLY IN SUPPORT OF
HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM**

We have extensively briefed the issues now before the Court and will not attempt in this final Reply brief to re-cover all the ground previously plowed. We would respectfully ask the Court to review our prior substantive briefs, including particularly (1) Petitioner's Initial Memorandum in Support of His §2255 Petition [Docket No. 4]; (2) Petitioner's Initial Reply in Support of His §2255 Petition [Docket No. 19]; (3) Petitioner's Response to the Government's Motion to Reconsider in Light of *Massaro v. United States* [Docket No. 29]; (4) Petitioner's Supplement to His Ineffective Assistance of Counsel Claim [Docket No. 39]; (5) Petitioner's Supplemental Brief in Support of His Ineffective Assistance of Counsel Claim [Docket No. 85]; and (6) Darryl Johnson's Motion for Consideration of His *Brady v. Maryland* and *Johnson v. Mississippi* Claims and Supplemental Memorandum in Support [Docket No. 88], in coming to its decision. Each of these prior submissions presents substantial facts, law and argument in support of our requests for relief. In this final submission, we will attempt, primarily, to respond to the points made in the government's most recent response brief. By doing so, we are not in any way waiving or abandoning any part of our prior arguments, all of which are squarely before the Court at this time.

## ARGUMENT

**I. Darryl Johnson's Ineffective Assistance of Counsel Claim**

As the Court is well aware, the government has conceded the first prong of *Strickland* – *i.e.*, that Mr. Johnson's trial counsel provided deficient performance by failing to investigate, research and present evidence about the statues, regulations, and case law which would have directly impeached government witness Warden John Vanyur, who testified about "future dangerousness" at Mr. Johnson's penalty-phase hearing. The government, however, persists in its position that Petitioner has not satisfied the second prong of *Strickland*, a showing "prejudice" from the deficient performance, which requires Petitioner to establish merely a "***reasonable probability***" that, absent counsel's errors, the outcome of the sentencing hearing may have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). As detailed both in this brief and in our prior submissions, Mr. Johnson has clearly established prejudice under *Strickland* and its progeny, and relief, in the form of a new sentencing hearing, is plainly required.

> A. The Government's Factual Admission That Warden Vanyur's Testimony Was Incomplete and Misleading, By Itself, Establishes Prejudice In This Context

After the Seventh Circuit Court of Appeals affirmed Mr. Johnson's convictions and death sentence on direct appeal, the government finally conceded that Warden Vanyur's testimony was "incomplete" and that based on the evidence it heard during the sentencing proceedings, "the jury may have held the mistaken impression that no legal authority existed to limit [defendant's] communications and contacts while in prison in order to curtail his future dangerousness. ... As we have acknowledged, there is in fact such authority [to limit petitioner's communications and contacts while in prison in order to curtail his future dangerousness]." Govt. Opp. to Cert. at 21, 29 (attached

as Exhibit A to Johnson's Initial Memorandum in support of his § 2255 Motion [Docket No. 4]). Thus, the government acknowledges that Vanyur's testimony regarding BOP's ability to limit Mr. Johnson's contacts and communications while in prison – testimony which went to the heart of the penalty phase hearing (*i.e.*, Darryl Johnson's supposed future dangerousness) and was the centerpiece of the prosecution's closing arguments to the jury – was misleading and created a false impression. This is not in dispute.

Boiled down to its essence, the government's argument at sentencing was, "the BOP cannot, and will not, house Darryl Johnson under strict conditions of confinement to eliminate the risk of him being a future danger, so he must be executed." This was a false argument based on admittedly misleading testimony from Warden Vanyur. That Warden Vanyur's testimony and the government's argument based on it were false and misleading is not mere argument or speculation; it is a fact. We now know, *as an undisputed factual matter*, that the BOP can, and did at the time of Darryl Johnson's sentencing hearing, house inmates under precisely the type of strict conditions of confinement that the defense proposed, and for as long as deemed necessary to ensure safety both within and outside the prison – exactly what Warden Vanyur testified was not possible or even legal.

It is difficult to fathom how – in light of (1) the undeniable importance of the "future dangerousness" factor, both as a general matter and more particularly in the government's penalty phase presentation and argument in *this case*; and (2) the applicable legal standard, *i.e.*, a "reasonable probability that the result might have been different – the government can maintain that *Strickland* prejudice has not been established. Prejudice would be apparent under these circumstances in a run-of-the-mill criminal case where an error impacting an issue central to the prosecution's case was conceded, but it is even more so in a case like this one involving imposition of the death penalty,

where it takes just ***one juror*** to stop a death sentence from being imposed. *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000).

The government's concession that the jury may well have been misled by Warden Vanyur's testimony on the possible conditions of confinement and future dangerousness, by itself, establishes *Strickland* prejudice under the facts of this case. For this plainly evident reason, as well as those discussed in more detail below, relief is warranted.

> B.    *Strickland* And Its Progeny Require Petitioner to Establish Merely a
> <u>"Reasonable Probability" That The Outcome May Have Been Different</u>

As the Supreme Court has made abundantly clear, in order to establish prejudice, it is required only that Petitioner establish that, absent counsel's errors, there is a "***reasonable probability***" that the outcome of the sentencing hearing may have been different. *Strickland*, 466 U.S. 668; *United States v. Cronic*, 466 U.S. 648 (1984)*; Strickler v. Greene*, 527 U.S. 263 (1999); *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). Moreover, those decisions make clear if there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting its verdict, "then we ***must*** find prejudice." *Strickland*, 466 U.S. at 695 (emphasis added). And notably, the Supreme Court has made clear that ***a "reasonable probability" is a lesser burden than a preponderance standard.*** *Strickland* at 693 ("a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the trial."); *see also Williams,* 529 U.S. at 405-06 (2000) (O'Connor, J., concurring) (state court rejection of ineffectiveness claim on grounds that prisoner failed to establish by "a preponderance of the evidence" that the outcome would have differed would be contrary to clearly established precedent).

4

1.  "Future Dangerousness" Is The Most Significant Factor For Juries Deciding Death Penalty Cases, And It Was Clearly The Most Significant Factor Argued At Darryl Johnson's Penalty Phase Hearing

Viewed under the light of the applicable legal standard, the government's position cannot withstand scrutiny. For the most part, the government's argument against a finding of prejudice attempts simply to ignore the unmistakable fact that "future dangerousness" is ***the most significant*** factor for jurors deciding a death penalty case. Again, this is not opinion or argument, it is a *fact* established beyond peradventure by multiple empirical and unrebutted research studies over at least the past two decades. *See* Marla Sandys, Ph.D. et al., *Aggravation and Mitigation: Findings and Implications*, Journal of Psychiatry & Law, 37/Summer-Fall 2009, 189 at 215-216 ("the research indicated that the most persuasive aggravator is juror perceptions of the defendant's future dangerousness; ... [T]he issue of future dangerousness is the crux of a juror's preference for death."); John H. Blume, Stephen P. Garvey, and Sheri Lynn Johnson, *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 398 (2001) (future dangerousness is central issue for most jurors, regardless of whether prosecutor argues it explicitly); Sally Costanzo and Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("Nearly all jurors also offered the observation that the penalty decision hinged on the issue of whether the defendant will pose a continuing threat to society") *id*. at 168 ("[F]uture dangerousness plays a prominent, if not central role * * *. Jurors clearly perceived the penalty decision as hinging on this issue."); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What Do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559 (1998) (future dangerousness evidence is highly aggravating and 60% of jurors interviewed were more likely to vote for death if they believed the defendant might be dangerous in

the future); Eisenberg & Wells, *Deadly Confusion: Juror Instructions in Capital Cases*, 79 Cornell L. Rev. 1, 7 (1992) ("[O]ver three-quarters fo the jurors believe that the evidence in their case established that the defendant would be dangerous in the future. And the more the jurors agree on this fact, the more likely they are to impose a death sentence."); James W. Marquart et al., *Gazing Into the Crystal Ball: Can Jurors Accurately Predict Dangerousness in Capital Cases?*, 23 L.& Soc. Rev. 449, 463 (1989) ("[D]ata show[s] that the decision to give life versus death in Texas rests squarely on Question 2 – future dangerousness."). *See generally, Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986) (discussing importance of ensuring that the jury understands the actual facts to assess the "prosecutor's closing argument, which urged the jury to return a sentence of death in part because petitioner could not be trusted to behave if he were simply returned to prison").

Indeed, based on a recent study of jury findings and verdicts in 72 federal death-penalty cases over the last 13 years, ***82.4 percent of those defendants who were found to constitute a future danger were sentenced to death, while 81.6 percent of those who were not so found were not sentenced to death***. Mark D. Cunningham, Jon R. Sorensen, Thomas J. Reidy, *Capital Jury Decision-Making: The Limitations of Predictions of Future Violence*, 15 Psychology, Public Policy & Law 223, 234-35, 244-45 & Table 1 (2009). Even the government is compelled reluctantly to admit that "future dangerousness played an important role in the government's argument at the sentencing hearing." Govt. Resp. at 14 [Docket No. 99]. There is no doubt that future dangerousness – the factor on which the government concedes Mr. Johnson's counsel offered deficient assistance – is the most critical factor in a death penalty case.

Moreover, as we have argued in prior filings, one need only look to the government's closing arguments to see how much it was stressed by the prosecutors in order to gauge the importance of

"future dangerousness" to the government's penalty case. (*See* Pet. Supp. Brief on *Brady* and *Johnson* Claims at 10-11 [Docket No. 88] (quoting Govt. closing arguments); Pet. Supp. Brief on IAC at 11-12 [Docket No. 85] (same). The fact that the government so forcefully argued future dangerousness in its sentencing summation as the basis for imposing a death sentence on Darryl Johnson is highly probative of prejudice. *See Johnson v. Mississippi*, 486 U.S. 578, 590 & n.8 (1988) (agreeing with lower court that improper reliance on aggravating evidence of prior conviction was not harmless, since the district attorney argued this particular aggravating circumstance as a reason to impose the death penalty). All of this further cements the conclusion that there is a "reasonable probability" that the result may have been different, absent counsel's deficient performance and prejudice has been established.

> 2. The Government Attempts to Turn The Applicable Legal Standard On Its Head

The government attempts to turn the legal standard on its head, and its argument on the "prejudice" prong of Johnson's ineffective assistance claim seems to suggest a legal standard that is exactly the opposite of what the Supreme Court has, now repeatedly, emphasized. That is, the question is ***not***, as the government's argument seems to suggest, whether there is a reasonable probability that the outcome might have been the ***same*** despite counsel's errors. Rather, relief *must* be granted if Petitioner can establish that, absent counsel's errors, there is a ***reasonable probability*** that the outcome of the sentencing hearing may have been ***different***. *Strickland*, 466 U.S. 668; *Cronic*, 466 U.S. 648; *Strickler*, 527 U.S. 263; *Williams*, 529 U.S. 362; *Wiggins*, 539 U.S. 510; *Rompilla*; 545 U.S. 374. Thus, the government argues, *inter alia*, that the Court should reject Petitioner's claim because "there were significant aggravating factors found by the jury other than

future dangerousness." Govt. Resp. at 19 [Docket No. 99]. From this, the government then leaps to the conclusion that

> the jury would have found future dangerousness based on the evidence that even the most secure environment available in the BOP can be circumvented, and even if future dangerousness had not been found, or had been found to be mitigated, the outcome would have been the same. The other aggravating factors, the absence of any significant consensus on any mitigating factors, and the evidence of petitioner's life of violence, would have led the jury to impose the death sentence even [if] it had rejected future dangerousness because of SAMs and §3582(d).

Govt. Resp. at 20 [Docket No. 99]. This is rank speculation, pure and simple. It certainly does nothing to undercut the claim of prejudice under the correct legal standard governing Darryl Johnson's ineffective assistance claim.

Indeed, in order for the government to prevail here, it must prove that the misleading testimony and false argument by government counsel was harmless ***beyond a reasonable doubt***, for that is the standard on a constitutional claim such as we have here. *See Satterwhite v. Texas*, 486 U.S. 249, 257 (1988) (applying constitutional harmless-error rule of *Chapman v. California*, 386 U.S. 18 (1967), to state capital sentencing proceedings); *see also* 18 U.S.C. §3595(c)(2) (requiring reversal of death sentence unless government proves on appeal that jury's erroneous special finding of an aggravating factor was harmless beyond a reasonable doubt). And, since, as to a death sentence, potential impact on ***one juror's vote*** establishes harm (or "prejudice"), the issue is whether the erroneous consideration of Darryl Johnson's future dangerousness may have influenced even a ***single juror*** in favor of death.[1] *See, e.g., Wiggins*, 539 U.S. at 537; *Johnson*, 223 F.3d at 670. There

---

[1] This must also be viewed in light of the fact that the jury deliberations in Darryl Johnson's penalty phase case were lengthy – more than 13 hours (R.208) which indicates the decision was reached neither easily nor readily. In that context, any shift in the evidence could have made a difference, at least to one juror.

can be no doubt that there is a reasonable probability at least one juror would have been dissuaded from voting for death had defense counsel not rendered the deficient performance on the central issue at sentencing, as the government concedes they did.[2]

> 3. Whether Vanyur's Testimony Is Determined To Be "False," "Misleading," Or To Have Created A "False Impression," Relief Is Required

As noted above, the government has conceded that the testimony of Warden John Vanyur, who testified for the government in the penalty-phase hearing, was "incomplete" and may well have "left the jury with a mistaken impression" of BOP policy and practices. *See* Ex. A to Johnson's Initial Memo [Docket No. 4], Govt. Opp. to *cert.* at 14, 20, 21, 28-29. Indeed, directly contrary to the distinct impression conveyed by Warden Vanyur, there is also now no dispute that the BOP has both the legal authority and the prison facilities to house inmates under strict conditions of confinement – *not to mention the pattern and practice of doing so* – "for as long as the BOP deems it necessary to ensure the security and safety of either prison staff, other inmates, or the public (*i.e.* to reduce or eliminate the inmate's future dangerousness)." Pet. Supp. Brief on IAC, Ex. D, Bezy Supp. Affid. at ¶18 [Docket No. 85].

_____

[2] The government's argument that there were other aggravating factors loses even further force when one considers other factually more severe cases in which prejudice based on ineffective assistance of counsel at a penalty phase hearing was found. *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997) (granting habeas relief based on ineffective assistance for failing to investigate and proffer certain mitigating evidence, which left the court with "a significantly different view of the balance between aggravating and mitigating circumstances when it [decided to impose the death penalty]"; the court found *Strickland* prejudice [*i.e.* a reasonable probability that the result may have been different] despite the despite the heinousness of the crime); *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000) (habeas relief granted based on ineffective assistance of counsel for failing to investigate and present certain mitigation evidence; finding prejudice prong of *Strickland* met notwithstanding "the inherent unforgivable viciousness of this murder."); *Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007) (relief granted under *Strickland* for counsel's failure to present certain mitigation evidence, despite multiple and significant aggravating factors in triple murder, also involving arson and burglary).

9

The government takes issue with our statements that Vanyur's testimony regarding the BOP practices and ability to confine inmates under strict conditions of confinement for as long as necessary was "false." Govt. Resp. at 16-18. We believe it is fair to say that we have now proven that Warden Vanyur's testimony was false, but it is of no consequence because proof of "perjury" is not a prerequisite for the relief sought. Under the law, whether Vanyur's testimony is determined to be "false" (as we believe we have shown), or just "misleading" or having created a "false impression" (as the government concedes), it makes no difference.

First, it is fairly clear now that Vanyur's testimony on these issues was, in fact, false. Indeed, that is not Petitioner's counsel making the claim, it is former BOP Warden Bezy who specifically described significant pieces of Vanyur's testimony as "false." *See* Pet. Supp. Brief on IAC, Ex. D, Bezy Supp. Affid. at ¶20 [Docket No. 85] ("the suggestion that Mr. Johnson was not eligible for placement at ADX immediately after sentencing, if deemed necessary and appropriate, is false and is belied by ADX's history. Similarly, the notion that the BOP is somehow powerless to prohibit specific inmates from committing serious crimes while incarcerated is also false."); *id*. at ¶27 ("Dr. Vanyur's assertion that it would be "extremely difficult, at best" for officials at a BOP facility such as USP-Marion to separate Mr. Johnson from other Gangster Disciples is simply false."). Indeed, this Court has already found that Mr. Bezy's affidavit "outlines a pattern of evidence that appears to contradict much of what the government's expert testified to" and "provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society." (Mem. Opin. and Order dated May 15, 2009 at 6-7 [Docket No. 71]).

10

Regardless, the government's sophisitc "this was not technically perjury" defense is irrelevant to the issue presented. Constitutional error occurs not just based on perjured or false testimony, but with testimony that creates a false impression, even if technically accurate. *Napue v. Illinois*, 360 U.S. 264 (1959) (failing to correct testimony that creates a false impression, though not perjured, violates due process). ***Due process is equally offended by direct statements which are untrue and the eliciting of testimony which "taken as a whole" gives the jury a "false impression."*** *Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (emphasis added). This is true even where the particular prosecutor acts in the utmost good faith and/or does not know that the testimony being presented is false or misleading. *See Giglio*, 405 U.S. at 153-54. Even under the most generous reading of Warden Vanyur's testimony, relief is required here.

> 4. The Government's Attempts to Avoid The Implications of Warden Vanyur's <u>Misleading Testimony Are Unpersuasive</u>

The government next tries to dismiss the relevance of the *Anthony Ayeni Jones* case discussed in our opening brief with the quip, "each case and each jury is unique." Govt. Resp. at 19 [Docket No. 99]. While true as a metaphysical point, it begs the question, and the government offers no substantive discussion nor attempt to distinguish the *Jones* case in the context of the issue presented here. That failure is telling.

In our lead brief, we discussed at some length the striking factual similarities between Anthony Ayeni Jones' case and Darryl Johnson's case. Both were gang leaders. Both had been convicted of ordering acts of violence, including murder. Indeed, Jones' case presented facts regarding his future dangerousness that were more alarming than Darryl Johnson's because Jones, unlike Darryl Johnson, had actually ordered violence from inside a BOP prison prior to his trial and

sentencing hearing.  *See* Pet. Supp. Brief on IAC at 21-25 [Docket No. 85].

The central point bears repeating:  the lone significant difference between the findings of the jury in Jones' case versus that of the jury in Johnson's case was that, after hearing accurate and complete information about the available conditions of confinement, seven jurors in *Jones* found that:

> ***Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the federal [BOP] is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society***.

Init. Memo in Support of §2255 Pet., Ex. D, Jones Verdict forms at 7, (mitigating factor #3) [Docket No. 4] (emphasis added).  By contrast, after hearing Warden Vanyur's testimony, *zero jurors in Johnson's case found this mitigating factor*, and consequently he was sentenced to death.  *Id*., Ex. C, Johnson Special Verdict forms at Part IV, ques. 4 (Blunt Johnson murder); Part IV, ques. 5 (Charles Banks murder).

In light of these facts, the government's attempt to cavalierly dismiss the importance of the *Anthony Ayeni Jones* case to this Court's prejudice analysis by saying "every case is unique" logically means that no argument based on other similar cases has any value.  This, of course, is absurd.  The use of precedent is one of the cornerstones of the rule of law.  *See generally, Gonzales v. Carhart*, 550 U.S. 124, 190-91 (2007) ("[T]he very concept of the rule of law underlying our own Constitution requires such continuity over time that a respect for precedent is, by definition, indispensable.").  The *Anthony Ayeni Jones* case provides compelling evidence of *Strickland* prejudice in Darryl Johnson's case.

Next, the government makes much of the fact that the jury did not find any mitigating factors "unanimously." Govt. Resp. at 12, 14 [Docket No. 99]. This is yet another misguided argument for at least two reasons. First, it only takes a single juror to stop a death sentence. *Wiggins*, 539 U.S. at 537; *Emerson v. Gramley*, 91 F.3d 898, 907 (7th Cir. 1996); 18 U.S.C. §3593(e) (requiring unanimous vote of jury to impose death sentence). Thus, unanimity may be a very telling fact with respect to *aggravating factors*, like future dangerousness, but because it only takes one juror to stop a death sentence, unanimity (or the lack thereof) offers little if any relevant information in the context of *mitigating factors*. As this Court has already found in a prior decision in this case,

> In order to succeed on this claim, Johnson must establish that but for counsel's failure, there is a reasonable probability that a jury may have declined to reject Johnson's proposed finding on future dangerousness and reached a different outcome in its decision to sentence him to death. *Eckstein v. Kingston*, 460 F.3d 844, 848-50 (7th Cir. 2006). And because 'it takes only one juror to nix a death sentence,' *United States v. Johnson*, 223 F.3d at 670, that threshold is even lower here.

Ex. B to Pet. Supp. Brief on IAC, Memorandum Opin. and Order dated May 15, 2009 at 6 (emphasis added).

Second, on the single most important factor to juries considering whether or not to impose death – *i.e.* future dangerousness – the jury was given admittedly misleading information by Warden Vanyur, and the government argued that misleading evidence most pointedly to the jury in its closing arguments. The error of Vanyur's admittedly misleading testimony was compounded by the vehemence of the prosecutors' false arguments based on that misleading (if not false) testimony.

**CONCLUSION**

For all the reasons set forth above, as well as those contained in our prior pleadings with the Court, Petitioner Darryl Lamont Johnson respectfully requests that the Court grant Johnson's §2255 petition based on a finding of ineffective assistance of counsel (as well as on the other grounds raised in his Petition), vacate his sentence, order a new sentencing hearing, and grant whatever other relief it deems just and proper.

Respectfully submitted,

/s/ Terence H. Campbell
An attorney for Defendant Darryl Johnson

Terence H. Campbell
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street, Suite 600
Chicago, Illinois  60602
(312) 263-0345

Lorinda Meier Youngcourt
Post Office Box 206
Huron, IN 47437-0206
(812)849-9852

*Counsel for Petitioner Darryl Johnson*

14

**<u>CERTIFICATE OF SERVICE</u>**

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

1.    Petitioner's Final Reply in Support of His Ineffective Assistance of Counsel Claim was served pursuant to the District Court's ECF system as to ECF filers, including the United States Attorney's Office.

/s/  Terence H. Campbell
Terence H. Campbell